THEODORE PAYNE, Appellant, *v.* THE CITY OF SAN FRANCISCO, Respondent.

To entitle a party to recover as Street Commissioner of San Francisco, he must show, not only that he had discharged his duties, but, 1st, that he had been lawfully elected; 2d, had qualified himself to hold the office, by taking the oath and filing the bond, at the time and in the manner required by law.

The neglect of the plaintiff to qualify for the office within the ten days stipulated by law, after his election, was a refusal on his part to serve, and vacated the office, so far as he had any right thereto.

Such qualification must be made before a proper officer, and cannot be made before the Mayor of the City, who has no power to administer the oath of office.

Nor will a joint resolution of the City Councils, approved by the Mayor, recognizing a party as Street Commissioner, enable him to recover for services rendered in that capacity, upon a *quantum meruit.*

APPEAL from the Superior Court of San Francisco.

The plaintiff claimed to be Street Commissioner of the said city, duly elected and qualified, and duly performing the duties of said office; that as such, he is entitled to a salary of $4,000 per annum, fixed by law, payable monthly by defendant; that he performed the duties of the said office for the month of March last, and became entitled to the sum of $333 33 for said services, yet defendant, though requested, &c., had refused payment, &c.

The complaint also sets forth a claim for the value of plaintiff's services performed in behalf of defendant, at its special request, and for which defendant promised to pay, &c., but had refused, &c., and claims damages $333 33 and costs.

Defendant's answer denies that plaintiff was duly qualified, and had performed the duties of Street Commissioner, and denies that he is entitled to the salary claimed, or the sum of $333 33, or any other sum for services, and denies generally the allegations of the bill.

It was conceded that the defendant was duly elected Street Commissioner in September, 1851, and it was proved that he took the oath of office before the Mayor of the City, and filed his bond on the 7th of January, 1852, which was approved by the Mayor.

There was also proof, and so found by the jury, that the plaintiff demanded of Mr. Divier, claiming to be Street Commissioner, the surrender of his books and office, &c., on the 9th of January, 1852 ; that the Common Council of the City, by a resolution passed the 26th January last, declared that the plaintiff be recognized as the Street Commissioner, and ordered that he proceed to the discharge of the duties of his office, and ordered him to do work from time to time, from the 7th January, 1852, to the 1st April, in and about repairing streets, &c., which he did, and had acted as Commissioner, doing the duties as such, from said 7th of January ; that the City had paid him, for the months of January and February, the sum of $333 33 per month; that payment for the month of March had been refused, and was still unpaid; and that he had performed his duty as Street Commissioner, by order of the Mayor and Common Council during the said month of March last, and that the services were worth $333 33.

Mr. Divier, who claimed to be Street Commissioner, and of whom demand was made for the books, &c., by plaintiff, as above, had been elected antecedently to the plaintiff's election, and held over the office, on the ground that plaintiff had not duly qualified as required by law.

The District Court decided that plaintiff, not having taken the oath of office within ten days after the election, nor within ten days after the votes were canvassed, and the result known ; by the 15th section of Article IV. of the City Charter, such failure to qualify, vacated the office. The qualification before the Mayor was a nullity. That the Mayor has no authority to administer the oath of office to any person chosen or appointed to office by the authority of the State.

That the services performed by the plaintiff, by direction of the Mayor and Councils, do not entitle him to recover in this suit as Street Commissioner, for they are not authorized to create a Street Commissioner; this belongs to the qualified voters of the city alone, by election, at the time and in the manner pointed out by law.

And that William Divier, the previous Street Commissioner, continued the incumbent, and exercised his duties until Jan. 7,

1852, without dispute, and could not then be ousted and another put in his place, except by impeachment and conviction; and while holding the office, the Mayor and Council had no authority to direct another to perform his duties.

*Cooke,* for appellant.

The Councils are the agents of the City, and can bind it by contract. The Charter, sec. 13, art. 3, gives this power. The City is therefore liable for what these services are worth.

By article 4, sec. 16, of the Charter, the City Councils are to declare the result (of the election). They have done this by resolution, and there is no evidence at what time the returns were made; the presumption is, they have conformed to the requirements of law.

This court, in the case of The People, ex rel. Stephen Harris, decides the question of qualification. Chief Justice MURRAY there says: "In relation to the failure of the relator to qualify within ten days after the election, I do not understand that there is any authority whatever to show that this necessarily vacates the office;—this provision is merely directory."

The Mayor had power to administer the oath. See Charter, art. 4, sect. 2, second subdivision; and see 3 Hill, 245.

——, for respondent.

To enable him to recover, the plaintiff was bound to show that he was an officer *de facto,* as well as *de jure.* 7 Sergt. & R. 386; 1 Dewees, 579; 2 Barb. 325; 5 Mass. 427; 9 Mass. 231; 23 Wend. 490; 1 Salk. 284; 2 Raw. 139–40; 1 Greenl. Ev., sect. 92–3, n. 1, 2.

The Charter is express in requiring any person elected to a city office to qualify within ten days after his election; or, on failure, his office shall be deemed vacant. See art. 2, sect. 6, of the Charter.

The plaintiff took the oath before the Mayor on the 30th Dec., 1851; this was no compliance with the law. The oath should have been taken before a Judge of the Supreme Court, District, or County Court, or a clerk thereof, or Notary Public, or Justice of the Peace. Act concerning offices, § 27.

The Mayor has no power to administer official oaths. 2 Salk.

428; 2 Show. 67, note; 5 Mass. 427.    The omission to qualify within the ten days is fatal to plaintiff's right.    Charter, art. 4, sect. 15; 20 Wend. 15, 16; 17 Wend. 85; 7 Sergt. & R. 386; 23 Wend. 490; 5 Mass. 427; 1 Salk. 284; 2 Salk. 429; 2 Show. 66, 7, and note, p. 67 and 475.    The absence of an oath as a qualification, within a specified time, is fatal; see the above authorities, and Cowp. 536; 12 Mod. 601; 5 Mod. 317.

Mr. Divier was the officer previously elected to Sept. 3, 1851, and was duly qualified, and had a right to hold over until his successor was qualified.    Charter, art. 4, sec. 16; 9 Paige, 511; 18 Wend. 518.

If not the lawful Commissioner, plaintiff cannot recover for the services rendered by him.    They were rendered as Street Commissioner, and belonged to that office, and for which a salary was fixed, and this is the only compensation provided by law, and this belongs to the lawful officer.    3 Sand. 263, and cases cited.

LAW SCHOOL LIBRARY.

WELLS, Justice, delivered the opinion of the court.    HEYDENFELDT, Justice, concurred.

To entitle the plaintiff to recover in the court below, it was incumbent upon him to show, not only that he had discharged the duties of the office of Street Commissioner for the month of March, 1852, but, *first*, that he had been lawfully elected; and *second*, that he had qualified himself to hold the office, by taking the oath, and filing the bond, at the time and in the manner required by law.

The validity of his election is conceded.    The election took place on the 3d day of September, 1851, and the plaintiff took the oath of office before the Mayor of the City of San Francisco, on the 30th day of December following, and filed his bond on the 7th of January, 1852.    Was this a compliance with the requirements of the law?

The Charter of the city provides (art. iv., sec. 15), that, "If any person elected to a city office shall remove from the city, absent himself therefrom for more than thirty days, *or shall fail to qualify within ten days* after his election, his office shall be deemed vacant."

This provision we regard as being peremptory and positive in

its terms.  It differs essentially from those provisions of law which are construed by the courts as being merely directory; and it does not come within the rule established by this court in the case of The People, ex relatione Harris *v.* Benham.

Harris qualified within ten days after the result of the election was certified by the county clerk, and the decision of the court was in reference to the time of declaring the result and the issuing of the certificates.  The relator could hardly have been said to have been elected until the returns were made out, and the certificate issued, and the statute is regarded as merely directory as to the time of making such return, and issuing the certificate; neither does it come within the rules of the authorities cited, in The People *v.* Allen, Sheriff, &c., 6th Wendall, 486, and 3d Hill, Exparte Heath and Others, p. 42.  It is admitted to be well settled as a general rule, that where a statute specifies the time within which a public officer is to perform an official act, regarding the rights and duties of others, it will be considered directory merely, unless the nature of the act to be performed, or the language of the legislature shows, that the designation of the time was intended as a limitation of the power of the officer; thus, where an act requires a sheriff to file a certificate of sale within ten days, his omission or neglect to do so within the specified time does not affect the validity of the sale; and where a statute requires an act to be done by an officer within a certain time for a public purpose, though he neglect his duty by allowing the precise time to go by, if he afterwards perform, the public shall not suffer by the delay.  An election is not rendered void by reason of the inspectors failing to make the returns within a specified time, nor will an assessment be invalidated by the omission of the assessors to assess the tax within a particular time.  There is a broad distinction, however, between these cases and the one at bar, wherein the act to be performed was not an official act regarding the rights of others; nor was it for a public purpose, nor one in which the parties could suffer from the delay: it was not to affect the rights of third parties, but his own right.  It affected him, the officer, his rights and duties; it came within the exception; the nature of the act to be performed, and the language used by the legislature, showing that the designation of the

time was intended as a positive limitation; and after having been declared duly elected by the proper officer, the plaintiff has no choice but to accept or forfeit the office.  His neglect to qualify within the ten days was a refusal on his part to serve, and vacated the office, so far as he had any right or claim thereto.  This position is sustained in The People, ex relatione Platnar *v.* Jones, 17 Wendall, p. 81, and cases cited, besides numerous other authorities.

Not only did the plaintiff fail to qualify in time, but it does not appear that he ever qualified before a proper officer.  The Mayor of the City of San Francisco had no power or authority to administer the oath of office; such power is claimed for him, however, upon the ground that the authority to administer oaths generally was conferred upon him impliedly by a provision of the Charter, taken in connection with a section of the Practice Act. A glance at these provisions will serve to show how untenable is this position.  The Charter provides (art. 4, sec. 2, second subdivision, defining the duties of the Mayor, as "head of the police,") "That the Mayor shall have power to receive and examine into all such complaints as may be preferred against any of them (the subordinate officers of the police), for violation and neglect of duty, and to certify the same to the Common Council." And the Practice Act provides (chap. 8, sec. 442), that "every court of this state, every judge or clerk of any court, every justice of the peace, every notary public, and *every officer authorized to take testimony, or to decide upon evidence in any proceeding*, shall have power to administer oaths or affirmations."

The word *proceeding* has an understood signification in law, and it will not be seriously insisted upon in a legal argument that the power of the Mayor as "head of the police," to "receive and examine into" complaints against a policeman for neglect or violation of duty, is a *proceeding* in a legal sense, nor that the duty imposed upon him to certify such complaint is an authority to "decide upon evidence" in such proceedings.  It is even doubtful whether he could administer an oath in examining complaints against policemen, which he had no right to decide, but could only certify to the Council.  Surely, then, it will not be urged that this duty clothed him with authority to administer oaths

generally; much less can it be inferred that the other and separate power of administering the oath of office was bestowed upon him. Such was clearly not the intention of the legislature, as is manifest from the "act concerning officers" (art. v., s. 27: "Of the oath of office"), passed subsequently to the passage of the act creating the Charter.

The next proposition advanced by the appellant is, that, having been recognized as Street Commissioner by a joint resolution, passed by the Common Council, and approved by the Mayor, and having, under the direction of the Mayor and Common Council, performed services as such, he is entitled to recover what those services were worth. It is hardly necessary to argue such a point as this. The work claimed to have been done was in the performance of the duties of Street Commissioner,—duties incident to and belonging to the office. The office of Street Commissioner is separate and distinct in its character and functions from the Common Council: it is created and made elective by the Charter, which prescribes how the officer shall be elected, his qualifications, and the manner in which a vacancy in the office shall be filled. The Common Council can neither create a Street Commissioner, or fill a vacancy in the office, nor can it direct that the duties of the office shall be performed by any person other than the lawful incumbent. It may, in the exercise of its legislative power, prescribe the duties of the officer, but it is no more within the scope of its authority to employ a Street Commissioner, or a person to perform the duties attached to the office, than it is to fill a vacancy, or to employ a person to perform the duties of the Mayor or Recorder.

The plaintiff, not being the lawful Street Commissioner, the Mayor and Common Council had no right to contract with him for the services rendered, and he cannot therefore recover upon the *quantum meruit*. The services were rendered by him as Street Commissioner, they belonged to the office, and for which the salary fixed for that office is the only and full compensation fixed by law.

Not being Street Commissioner *de jure*, neither was he *de facto*. William Divier was the lawfully elected and qualified Street Commissioner previous to September 3d, 1851. He continued to

hold the office, and exercise the duties without interference, until the 7th of January, 1852, when the plaintiff demanded the office, and the books belonging to it, which Divier refused to surrender, and continued to hold over.   He had a right to do so until his successor was duly elected and qualified, and was, and is, entitled to hold against all claimants, to discharge its duties and receive its emoluments, until the office is regularly filled by an election, as provided by the Charter ; until then, he could not be ousted, except by suit, or by impeachment and conviction.  And it is quite as absurd to say, that the Mayor and Common Council could bestow the office upon the plaintiff by a joint resolution, as that they could deprive Divier of his legal rights by the same means ; as unreasonable as to claim that the resolution of recognition, which at one time is set up as constituting a contract, shall, at another point in the argument, be considered upon presumption as an official return and certificate of election.

Upon a full examination of the case, we regard the appeal as entirely destitute of merit, and order that the judgment be affirmed.