## HART v. PLUM.

Appeal dismissed because the record contained no copy of the pleadings.

Under the 2d Section of the Revenue Act of 1857, taxing all property within the State, except certain descriptions of property—among which are mining claims —a flume, constructed by a mining company along the bank of a river leading to the claims of the company in the bed of the river, is not exempt.

The fact that such flume is an auxiliary to the working of the claim, does not exempt it. It is not so affixed to the claim as to be a part of it.

The case of the *People* v. *Moore*, (12 Cal.) simply holds, that the value of a mining claim itself, cannot be taxed; but this does not exempt everything near the claim necessary to give it value.

The object of the 8th Article of the Act of 1854, p. 102, if in force, is to procure a true statement of taxable property. But these provisions are directory. If the value of the property be rightly fixed by the Assessor, the assessment is valid, though that value was arrived at, in a way different from that pointed out by the statute.

If an Assessor cannot find the persons to be taxed, he may, nevertheless, assess their property.

The provision that the assessment must be made on or before the first Monday of May is directory. And, generally, when a time is fixed by statute within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered directory, unless the nature of the act to be performed, or the language of the Legislature shows, that designation of the time was intended as a limitation of the power of the officer.

In this case the assessment could be made after May, by virtue of the second proviso in the 11th Section of the Act.

The flume, although not delivered to the company by plaintiff, the Contractor, until after the assessment, was the property of the company at the time of assessment; taxable to it, and not to the Contractor.

The Contractor had his lien; but the flume being constructed for the company, on land selected by it, and paid for, as the work progressed, was the property of the company, although they had power under the contract to reject the work when completed.

Hart *v.* Plum.

APPEAL from the Fifteenth District.

The Oroville Mining Co. a corporation organized under the general laws of the State, was the owner of a mining claim in the bed of Feather River. In October, 1856, the company contracted with plaintiff, Hart, to construct a flume to carry away the water of the river so as to leave the bed dry. This flume was essential to the working of the claims in the bed of the river. The flume was to be constructed during the mining season of 1857, and the company were to pay Hart $110,000, in sums proportioned to the work done, as it progressed. At the date of the contract the company had no improvements on the claim. Hart had possession until the 26th Sept. 1857, when the company accepted the work as completed under the contract. Before the second Monday of May, 1857, Hart had finished the grading along the bank of the river, which constituted about one-fourth of the entire work. On the 10th day of August, 1857, the Assessor assessed the tax complained of in this case, upon the flume, fixtures, etc. as the property of said company. The tax not being paid, was returned as delinquent.

November 30th, 1857, the company sold the flume and fixtures to the plaintiff, Hart, for ten thousand dollars. He at once removed the flume and fixtures from the bed of the river to the bank. The defendant, as Sheriff, and *ex officio* Tax Collector, having received the delinquent list, levied on the lumber which had been in the flume to satisfy the tax before assessed. To prevent a sale, plaintiff paid the tax under protest, and now sues to recover it back.

There was first a demurrer, and then an answer. The main grounds relied on, are, that this mining claim was not taxable, and not legally assessed.

The Court below, on an agreed statement, found for plaintiff. Defendant appeals.

The other facts appear in the opinion of the Court.

*P. H. Harris*, District Attorney, for Appellant.

1. Was the property properly assessed as belonging to the Oroville Mining Co. ? The right to mine the bed of a river embraces the use of its banks, and the construction of the improvements thereon. Without such right the mining right

would be a vain thing.   The property of a bed of a river is the property of its banks; the improvements, consisting of grading and the erection of permanent works, were part of the freehold, and hence were the property of the company.   (2 Kent's Com. 756.)   Hart constructed the works from means furnished from time to time by the company.

2.  Did the Assessor fulfill the law in his manner of assessment?  Section 11 of the Revenue Act, (Wood's Digest, 618,) permits Assessors to specially assess any property which shall not be on the regular list, at any time prior to the last Saturday in October.   Provisions in regard to time are directory.   (3 Cal. 122; 7 Id. 442 ; and by analogy, 6 Id. 49 ; Sedgw. on Stat. Law, 368.)

The Assessor made his assessment on information derived from a former officer of the company, and from personal knowledge.  This he had a right to do, the members of the company being absent when he called.

3.  Defects in the assessment should have been remedied by application to the Board of Equalization, and not to the Courts.  (6 Cal. 42 ; 4 Wend. 223 ; 5 Hill, 16.)

4.  The improvements of the company are to be assessed.  (Rev. Act, Sec. 57, Wood's Dig. 637 ; also, Secs. 4, 6, p. 616.)

The case of *People* v. *Moore*, (12 Cal.) exempting the price of a mining claim from taxation, does not exempt improvements on the claim.   Section 5 of the Revenue Act subjects to taxation "all machines and machinery," "all works and improvements," "structures, erections," etc.

*Burt & Rhodes*, for Respondent.

I.   It is admitted that the claim was a mining claim; and, furthermore, that it was impossible to work the said claim, except by the construction of the flume on which the tax was laid.  The question then arises, whether, under the Act of the Legislature, exempting mining claims from taxation, it is competent to tax constituent portions of that claim?

1.  Mining is the great interest of the State.   Unquestionably, then, the main object of the Legislature was to promote the full development of the mining interest, and hence the exemption from taxation.

2.  Another consideration was, the impossibility of arriving at

any definite value of the claims themselves.   Take the present claim as an illustration :   Here the Oroville Mining Co. owned the bed of the river for a distance of over three thousand feet, which they had taken up and recorded as a mining claim.   How could an Assessor value it?   It might be worthless, or worth half a million, as the claim next above—the Cape Claim—proved to be.   But without the flume, the claim was useless.   (*People* v. *Moore*, 12 Cal.)

II.   Supposing the 8th Art. of the Revenue Law to be in force still, and that corporations owning mining claims and working them, are liable specially to be taxed to the amount of their capital stock, it is contended in the second place: 1st. That the tax is illegal, because at the time of the assessment, the Oroville Mining Co. was not the owner of the flume and other improvements on the claim.

The company contracted with Hart for the building of their flume.   Hart took all the risks of fire and flood, and agreed to deliver said claim when the flume was completed in proper condition for mining, with the appurtenances to the parties of the second part.   The company had no improvements of any kind on the claim until the 26th of September, 1857, at which time they accepted the contract at the hands of Hart.   The works previously to that time belonged to the Contractor.   The company had the privilege to reject or accept the works, and their property in them did not vest for any purpose until the Trustees had accepted the flume from Hart.

The Assessor went to the office of the company to make his assessment on the 10th of August, 1857, more than a month before the works passed out of the hands of the Contractor.

To whom did the unfinished flume belong on the 10th August?   Certainly not to the company, for, *non constat*, that when completed they might not refuse to take it for some of the reasons stipulated in the contract.   On that day, then, Hart was the sole owner of the unfinished works.   He could have sold them, removed them, and violated his contract at pleasure, the company being, in that event, driven to its action for damages.   (*Phelps* v. *Willard*, 16 Pick. 29 ; Hilliard on Sales, 121, Sec. 16.)

2. The tax is illegal, because the Assessor did not comply with the mandatory provisions of the law relating to the mode

and manner of assessing private and incorporated companies and associations.  (Wood's Dig. 636, Secs. 30, 80.)

If the company are liable to taxation at all it could only be assessed under the 8th Article of the Revenue Law, Section 54. Such companies are to be assessed in a way different from the ordinary way, and the law must be strictly followed.  (*Dewitt* v. *Hays*, 2 Cal. 463 ; *Hays* v. *Hogan*, 5 Id. 241 ; *Ferris* v. *Coover*, 10 Id. 590 ; *Kelsey* v. *Abbott*, 13 Id. 609 ; 10 Johns. 404 ; 4 Pet. 349 ; 4 Wheat. 377 ; 4 Hill, 76, 92 ; *Marsh* v. *Chesnutt*, 14 Ill. 223.)

The Assessor did not make the demand required by the statute, and this is indispensable to the validity of the tax.  (Black. on Tax Titles, 37, 205 ; *Bott* v. *Peasly*, 11 Mass. 169 ; 10 John. 404.)

The valuation of the property taxed must be made upon the principles, and in the manner, prescribed by law.  In the case at bar, the Assessor, instead of valuing the property, or the amount of improvements made by cash paid in, as required by the proviso to Section 57, inflicted the penalty, and estimated the amount of capital stock called in.  (Black. Tax Tit. Secs. 178, 183 ; 5 Gilm. 376 ; *Grove* v. *Bowen*, 11 Ill. 431.)

When a statute requires a list to be filed on or before a certain day, a neglect to comply with the law renders the acts of the Assessor absolutely void.  (Black. T. T. 145, 146, 137, 149, 308, 56, 62, 80, 203, 187 ; *Thames Man. Co.* v. *Lathrop et als.* 7 Com. 550.)

The argument that the Assessor may neglect his duty until the last Saturday in October of every year, is preposterous, for this reason : That the law gives the right to appeal from the assessment to the Board of Supervisors, when too high, etc. and the Board is compelled by law to sit as a Board of Equalization on the second Monday of August, and are compelled equally to adjourn before or on the second Monday in September.  (Wood's Dig. 617, Sec. 8.)

On the motion to dismiss the appeal, the following opinion was delivered by TERRY, C. J.—BALDWIN, J. concurring :

In all cases appealed the statute requires that " the Appellant shall furnish the Court with a copy of the notice of appeal, the judgment roll, and the statement, if there be one."  (Pr. Act. Sec.

346.)   The record in this case contains no copy of the pleadings, and therefore does not meet the requirements of the statute.

Appeal dismissed.

The judgment roll having been brought up by *certiorari*, the following opinion was delivered by BALDWIN, J.—FIELD, C. J. and COPE, J. concurring :

This record involves the construction of the revenue laws of the State.   The plaintiff sues the defendant for a sum of money paid by the plaintiff as taxes assessed upon certain property of the Oroville Mining Co. a corporation organized under the general laws of the State.   The property was a flume, constructed along the bank of the Feather River leading to the claims of the company in the bed of the river.   These improvements and appliances seem to be necessary to the working of such claims.   They were constructed at great expense, under contract with one Hart, the plaintiff.   It is charged in the complaint that they were not to become the property of the company until received by it, and that this was not done until after the assessment was made.   Some other facts appear in the case, which will be noticed hereafter.

1. The first point made is, that this work is not taxable under the laws of this State ; the argument being that mining claims are exempted by the Revenue Acts, and that this work is merely appurtenant to, and a part of, the claim.   By Section 2 of the Revenue Act of April 27, 1857, (Wood's Dig. 616,) " all property of every kind and nature whatever, within this State, shall be subject to taxation, except " certain descriptions, among which are mining claims.   The Constitution provides that taxation shall be equal and uniform throughout the State, and all property in this State shall be taxed in proportion to its value, to be ascertained, etc.

As the Constitution and the 2d Section of the law seem to be explicit in the requirement that all property shall be taxed, the exemption should very clearly appear to have been made in the Act before we could give effect to it.   It cannot be disputed that this work is property.   It is protected as such by the law, and might be recovered or defended as other property.   It has, we presume, an ascertained value.   The fact that it is in some

sort an auxiliary to the working of the mining claim, does not exempt it. It is not affixed to the claim so as to be a part of it. It is rather to be regarded as machinery or as apparatus useful in mining. It may be indispensable to the working of the claim, but so are many articles of personal property; but these do not become from this circumstance a part of the freehold, or exempt from taxation. The machinery of a quartz mill is not exempt, nor are ditches conveying water to mining claims, though the claims and ditches should both be owned by the same persons. So improvements upon public lands are taxed. It is impossible to conceive a good reason for embracing these latter and exempting the former, as proper subjects of the taxing power. The case of *The People* v. *Moore*, was not designed to establish the doctrine contended for by Respondents, for the whole stress of that case is to show that the value of the claim itself cannot be taxed; but this does not carry a like exemption to everything near the claim necessary to give value to it.

2. The next objection is, that it appears by the record that the Assessor did not call, on or before the first Monday in May, upon the President, etc. for .a list of property of the corporation, but some time in August took a statement from the Secretary, whom he found in the office. We do not understand upon what principle it can be held that a tax rightly assessed in fact, as to value, etc. would be invalidated, because a particular mode of arriving at the right result was not adopted. If the 8th Article, (Wood's Dig. 636,) is in force, the object of it evidently was to procure a true statement of taxable property of corporations, as required by law. But if such statement be procured, and the assessment of property made, and, especially, if the party taxed have notice of this, it would seem that the end of these directory provisions has been answered. It could not have been supposed by the Legislature that a Tax Assessor should be compelled to find all the persons to be taxed, or on failure to find them that their property should go untaxed. They might happen to be, or manage to keep, out of the way. In this case, the Assessor called at the office of the company. He found there the late Secretary, who had the books, and from the information there obtained and his own knowledge, made the assessment, or procured the materials for it. If there was error in

Hart v. Plum.

this, the error would be a good ground for impeaching the assessment; but the mere process, (though different from the statutory one,) by which a correct result is arrived at by a ministerial officer, would not invalidate a correct conclusion. Besides, it seems that the corporation appeared before the Board of Equalization, and the amount of taxes was, at its instance, reduced. After this, could it claim that there was no assessment at all? It had all the advantage of an appeal to the Board, and full notice of the assessment.

3. It is next objected that this assessment was made after the first Monday of May. This provision we are inclined to think is merely directory, upon the general principle that when a time is fixed by statute, within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered directory merely, unless the nature of the act to be performed, or the language of the Legislature shows that designation of the time was intended as a limitation of the power of the officer. (3 Cal. 122.) Moreover, the 11th Sec. of the Act, (Wood's Dig. 618,) in the second proviso, declares : " that the Assessor may, at any time prior to the last Saturday in October, specially assess any property which shall not be on the regular list; and if he makes any such special assessment, he shall forthwith deliver a copy thereof to the Tax Collector, and the original to the Auditor, who shall charge the Tax Collector with the amount of taxes due thereon; and all special assessments shall be as valid, and shall have the same force and effect, as the regular assessments." The object of this provision was to enable the Tax Assessor to assess property which, from various causes, may have been omitted. In this case, it seems that on the second Monday in May, these works were not completed, or brought near to completion. Therefore, as structures, erections, or improvements, they could not well, if at all, have been taxed at the first period mentioned in the Act.

It is argued, that if the assessment could be made after May, then the party taxed might be deprived of a right of appeal to the Board of Equalization, which only sits in August and until September in each year, for the correction of the list. But this argument, if good at all, would only be good when the assessment was made after August, and when it was too late for the

Board to act; which was not the case here—but the reverse is shown.

4. The last point is, that these taxes were improperly assessed to the company—that Hart, the Contractor, was to deliver the work at a subsequent period to the assessment, to the corporation, and, until delivery, it belonged to him, and not to the corporation. But the contract was for the benefit of the corporation, and the work was to be done upon land selected or appropriated by it. The work had been paid for as it progressed, and most of the price had been paid. The interest, under the circumstances, was in the corporation; and the Contractor would have his lien on the property for the balance due, if any. The fact that, on the completion, it might possibly have been rejected by the corporation, did not make it the property of the Contractor, and taxable to him; for he could not have sold it, nor could it have been legally sold for his debts.

The other points do not seem to be well taken.

Judgment reversed and cause remanded for a new trial.