## THE PEOPLE *v.* JAMES JONES.

EVIDENCE ON TRIAL FOR ROBBERY.—On the trial for an assault with intent to rob, evidence on behalf of the prosecution is not admissible for the purpose of showing that the defendant entered into an agreement to commit another robbery on a different occasion.

CONFESSIONS OF DEFENDANT.—If the prosecution prove the defendant's confessions of the crime with which he stands charged, circumstances may be shown corroborative of those confessions.

EVIDENCE IN CRIMINAL CASE.—On the trial of a defendant charged with one crime, testimony is not admissible to show that he had been engaged in plans for the commission of other crimes.

APPEAL from the County Court, Placer County.

The defendant was convicted, and sentenced to the State Prison, and appealed.

The other facts are stated in the opinion of the Court.

*Jo. Hamilton,* for Appellant.

*J. G. McCullough, Attorney-General,* for the People.

By the Court, SAWYER, J.:

This is an indictment for an assault with intent to rob a Chinaman named Hong Koy, on the 26th of March, 1866, against the same party convicted of robbery in the case of *People* v. *Jones*, 31 Cal. 565.

In this case, we think the law necessary to the information of the jury fairly stated to them by the Court in its general charge, and in the instructions given at the request of defendant's counsel.

The witnesses were generally the same as those examined in the other case, and much of the testimony was of a similar character. In this case, the confessions of the prisoner were very particular. He stated that Hong Koy was in the habit, on Monday morning, of going down a certain road on his way to Sacramento to sell his gold dust; that he and one McCrea, indicted with him, knowing Hong Koy's habit, lay in wait for, and assaulted him for the purpose of robbing him of his gold dust, but that owing to the blunder of McCrea in seizing hold of the Chinaman instead of the horse, they failed in the attempt; that Hong Koy rode a gray horse; that his gold dust was in a bag fastened to the saddle; that McCrea, instead of seizing the horse, as he should have done, seized the Chinaman on the side opposite the one where the gold was, and pulled him off, and the horse ran away with the gold—about one thousand one hundred dollars—and they only got what little change he had on his person, and that the Chinaman afterwards ran after the horse. McCrea denied his blunder, and said that he seized both the horse and Chinaman, but could not hold both, and the horse jerked away; that he fired his pistol at the horse but did not stop him. It was proved by other witnesses that there was such a man as Hong Koy residing at Stewart's Flat; that he was in the habit of going to Sacramento on Mondays to sell his dust; that he owned a gray horse, and was in the habit of going down the said road riding his horse, to take the cars at Pino; that about the date

of the alleged assault, in the morning—the time when he usually went down—a gentleman heard the report of firearms, and soon after saw Hong Koy's horse going down the road alone, coming from the direction where the report of the gun was heard, and soon after saw Hong Koy running after him; that, on Monday morning, Hong Koy came to the house of one Buzzell, by whom he was well known, on the said road to Pino, in a state of great excitement, having with him his horse, and some five to seven pounds of gold in a leather bag, and wanted him, Buzzell, to go to Pino with him, where he was going to take the cars for Sacramento; that Buzzell went with Hong Koy to Pino, and carried the gold for him, and at his request went down again to meet him on his return next day, and accompanied him home. On his return the Chinaman showed an assay certificate for gold of the value of one thousand sixty-six dollars. We think these facts strongly corroborative of the confessions of the prisoners, tending to show that the offense had been committed; and that the evidence was properly submitted to the consideration of the jury. But there was much irrelevant testimony admitted tending to show that the prisoners were engaged in plans for the commission of other crimes, similar to the evidence discussed in the other case. This kind of evidence is sufficiently indicated, in our opinion in that case. The evidence in relation to an agreement to rob the Paymaster on the Pacific Railroad was also introduced in this case, in the same manner, and under the same circumstances, as in the other case. Such testimony could not fail to be very prejudicial to the defendant, and for these reasons the judgment must be reversed and a new trial had, and it is so ordered.