[No. 13535. In Bank. — September 5, 1890.]

THE PEOPLE ex rel. PETER A. FINIGAN, Re-
SPONDENT, v. DANA PERKINS, Appellant.

Oath of Office — Time for Qualification of Appointee — Mandatory
Statute. — The provisions of section 907 of the Political Code, providing
that when a different time is not prescribed, the oath of office must be
taken, subscribed, and filed within ten days after the officer has notice
of his election or appointment, or when no such notice has been given,
then within fifteen days from the commencement of his term of office;
and section 997, providing that an office becomes vacant upon the happen-
ing of certain events, one of which is the refusal or neglect of one who
is elected or appointed to an office to file his official oath or bond within
the time prescribed, — are mandatory, and the official oath or bond must
be filed within the prescribed time, or the right to the office becomes
forfeited.

Id. — Notice of Appointment — Commission — Delay after Commence-
ment of Term — Construction of Statute. — The receipt of a com-
mission or a certificate of election is notice of an appointment or election
within section 907 of the Political Code, and that portion of the section
which requires an officer to qualify within fifteen days from the com-
mencement of his term of office, where no notice has been given, applies
to cases where the result of an election is presumed to be known to the
person elected, or where an appointment to a term of office has been
applied for or is known to the appointee, and where the person elected
or appointed has failed to receive his commission or certificate.

Id. — Delay in Receipt of Commission — Member of State Board of
Agriculture. — A person appointed by the governor as director of the
state board of agriculture for the term of four years, who did not actually
receive his commission until nearly thirty days after it was issued to him,
and seventeen days after his term of office began, nor have any knowl-
edge of his appointment until that time, has ten days after the actual
receipt of his commission in which to qualify, and does not forfeit his
right to the office by failure to qualify within ten days after its issuance,
nor within fifteen days after the commencement of the term.

Id. — Qualification as Director of State Agricultural Society —
Variation of Oath from Commission. — Under the act of April 15,
1880, entitled "An act to provide for the management and control of
the state agricultural society of the state," declaring the state agricultural
society to be a state institution, and providing for a "state board of
agriculture," to consist of twelve directors to be appointed by the gov-
ernor, for the exclusive control and management of the said "state agri-
cultural society" as a state institution, the qualification as a "director
of the state agricultural society" of one commissioned as a director of
the "state board of agriculture," is a sufficient qualification of the ap-
pointee. The slight difference between the designation of the office in
the commission and in the official oath is of no importance.

Appeal from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*Edward P. Cole,* and *M. M. Estee,* for Appellant.

*Attorney-General Johnson, W. W. Foote,* and *Thomas J. Clunie,* for Respondent.

Gibson, C.—On the nineteenth day of January, 1887, Governor Bartlett issued a commission to the relator, appointing him a director of the state board of agriculture for the term of four years, which began on February 1st of the same year, as prescribed by section 4 of the act of 1880. (Stats. Cal. 1880, p. 49.) The commission was forwarded from the capitol at Sacramento to San Francisco by Wells, Fargo, & Co.'s express, addressed to the relator, at the latter place, but was not received by him until the seventeenth day of February, 1887, prior to which time he had no notice of his appointment or the issuance of the commission. The day after he received the commission he qualified by taking and subscribing the oath of office, which was filed the next day, —February 19, 1887,— in the office of the secretary of state. Upon the filing of his official oath he immediately entered into and commenced to exercise the functions of the office, and continued to hold and discharge the duties of such office until he was ousted therefrom by the defendant Dana Perkins, on the twenty-seventh day of January, 1888, who claimed the office by virtue of a commission issued to him by Governor Waterman on the third day of January, 1888, and under which he had duly qualified.

To determine the defendant's right to the office, the relator caused this action to be prosecuted, which resulted in a judgment removing the defendant from and letting the relator into the office. Thereupon the defendant appealed.

The main question to be determined is, whether the relator, in not qualifying under the commission until nearly thirty days after it was issued to him, forfeited his right to the office under sections 907 and 997 of the Political Code.

The first of the sections referred to provides that when a different time is not prescribed, the oath of office *must* be taken, subscribed, and filed within ten days after the officer has notice of his election or appointment, or when no such notice has been given, then within fifteen days from the commencement of his term of office; and the other section provides that an office becomes vacant upon the happening of certain events, one of which is the refusal or neglect of one who is elected or appointed to an office to file his official oath or bond within the time prescribed.

These provisions of the law are mandatory. The official oath or bond must be filed within the prescribed time, or the right to the office becomes forfeited. (*People* v. *Taylor*, 57 Cal. 620; *Payne* v. *San Francisco*, 3 Cal. 122; *People* v. *Brite*, 55 Cal. 79; *Hull* v. *Superior Court*, 63 Cal. 174; *People* v. *Hartwell*, 67 Cal. 11. See also *Ball* v. *Kenfield*, 55 Cal. 320, and *People* v. *Perry*, 79 Cal. 105.)

Now, can it be said that the relator refused or neglected to file his official oath within the proper time? We think not. To refuse is to decline the acceptance of something offered, or to fail to comply with some requirement. Neglect imports the omission or disregard of some duty. How could the relator refuse the appointment, or disregard the duty to qualify connected with it, until he received information of his appointment? The power to refuse a thing or neglect a duty must necessarily be based upon a knowledge of the existence of the thing or the duty. The relator did not receive his commission until February 17, 1887, nor have any knowledge of his appointment until that time; hence he could not have acted upon it before that date. It is conceded that he

filed his official oath two days after he received his commission. Treating his commission, then, as notice of his appointment, he qualified in time.

In cases of elections, it seems that the commissions of state officers elect, except governor and lieutenant-governor, are the only notices of their election that are provided for. The issuance of commissions to such officers devolves upon the governor under section 1291 of the Political Code, wherein it is prescribed that the governor shall, upon receiving from the secretary of state, in accordance with section 1290 of the same code, a copy of the statement of the vote cast at the election, issue commissions to the persons who from such statement appear to have received the highest number of votes for office. It is the same with regard to the certificates of election to county officers. In their case the county clerk must, as soon as the result of the election is declared by the board of supervisors, make out, under the seal of the superior court, certificates of election, and deliver one to each person declared elected by the board of supervisors. (Pol. Code, secs. 1283, 1284.) These are the only notices provided for. And unless the legislature intended that the receipt of the commission in the one case, or of the certificate of election in the other, should operate as a notice, then that portion of section 907 of the Political Code, requiring officers to qualify within ten days after the officer has notice of his election or appointment, can have no effect. But as the construction of statutes which leads to such a result is not favored, we must where possible, as in the case before us, adopt one that will give effect to every part; hence we think that it must have been the intention of the legislature that the receipt of either a commission or a certificate of election should be deemed a notice of an election. This view is sustained by *People* v. *Taylor,* 57 Cal. 620. There, it seems, a certificate of election as sheriff issued to the relator, and he failed to qualify within ten days there-

after, and it was accordingly held that the certificate of election was notice of his election, and having failed to qualify within ten days thereafter, the office became vacant.

We are also of the same opinion regarding the receipt of the commissions by appointees of the governor. To them the governor must also issue commissions (Pol. Code, sec. 891), and there is no provision for any other notice to them of their appointment.

The other portion of section 907, which requires an officer elected or appointed to office to qualify within fifteen days from the commencement of his term of office, evidently applies where an officer is elected at a general or special election, the result of which, when legally declared, is presumed to be known to him, and he fails to receive his commission or a certificate of his election, in which event he must qualify within fifteen days after his term of office begins. Or where he is an appointee of the governor, and, as in the case of the relator here, the commencement of his term of office is fixed at a time different from that of other offices, and he knew of his appointment when it was made, which became effective' upon the issuance of the commission to him (*Ball* v. *Kenfield,* 55 Cal. 320; *People* v. *Whitman,* 10 Cal. 38; *Conger* v. *Gilmer,* 32 Cal. 80; *Marbury* v. *Madison,* 1 Cranch, 137), and he fails to receive his commission, he is then required to act upon such knowledge, and qualify within fifteen days from the commencement of his official term. The relator in the present case had not, as appears from the evidence, applied personally nor through any one else for the office, and had no knowledge whatever of his appointment until he received his commission; he therefore had ten days thereafter to qualify, and having qualified within that time, he is entitled to the office.

The remaining question is, Did the relator qualify as a *member* of the state board of agriculture? The appel-

lant contends that he did not, as the act of April 15, 1880, provides for two separate and distinct institutions, viz., state board of agriculture, and state agricultural society, and the relator qualified as a director of the state agricultural society.

The act referred to is entitled "An act to provide for the management and control of the state agricultural society of the state." By the act the state agricultural society was declared to be a state institution, and a " state board of agriculture," to consist of twelve directors to be appointed by the governor, was also provided for the exclusive control and management of the said "state agricultural society" as a state institution. The relator was commissioned as a director of the "state board of agriculture," and he qualified as a " director of the state agricultural society." The commission followed the designation of the office in the act by which it was created, and we think it therefore sufficiently definite and certain. The slight difference between that and the designation of the office in the relator's official oath we deem of no importance whatever. He qualified as a director of the state agricultural society. This is the equivalent of qualifying as a member of the board of directors, and also as a member of the society, for it is clear he could not be a director without being a member, nor be a director without being a member of the only board of directors designated and provided for in the act.

The questions being thus disposed of adversely to the appellant, it results that the judgment should be affirmed.

FOOTE, C., and VANCLIEF, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.