[Civ. No. 790. First Appellate District.—February 27, 1911.]

MABEL EDWARDS, Respondent, v. CHARLES A. SWEI-
GERT et al., as the Board of Trustees of the Police
Relief and Pension Fund, Appellants.

SAN FRANCISCO CHARTER—POLICE PENSION FUND—RETIREMENT OF DIS-
ABLED OFFICER ON LIFE PENSION—WIDOW NOT ENTITLED.—Under
the terms of the San Francisco charter, a widow is entitled to a
pension only when her husband is killed in the service, and where
he was not so killed, but was retired on a disability pension for
his life, which by the terms of the charter ceased with his death,
his widow can claim no pension under the charter.

ID.—INJURY TO OFFICER IN PERFORMANCE OF DUTY—DISABILITY AFTER
SEVEN YEARS—DEATH AFTER TWO YEARS' RETIREMENT.—An officer
who merely receives an injury in the performance of his duty, and
does not retire as disabled upon a pension for life until seven years
thereafter, and who dies two years after his retirement, cannot be
said to have been "killed while in the performance of his duty," so
as to entitle his widow to a pension on that ground.

ID.—NATURE OF "KILLING OFFICER IN PERFORMANCE OF DUTY."—A police
officer may be said to have been "killed in the performance of his
duty," who dies *soon* after receiving an injury in the performance
of his duty.

ID.—CONSTRUCTION OF CHARTER.—Construing all of the provisions of
the charter together, the intention is manifest to exclude a widow
from claiming a pension under it, as the widow of an officer killed
in the performance of his duty, where such officer has retired under
a disability pension to continue only until his death and then to
cease.

ID.—CARDINAL RULE OF CONSTRUCTION.—It is a cardinal rule of con-
struction of statutes that some effect must be given to every word
and clause, if possible. Words in a statute should never be con-
strued as unnecessary and surplusage if a reasonable construction
can be adopted which will give force to all the words of the statute.

ID.—ADDITION OF WORDS OF PENSION "TO CEASE AT DEATH"—CLAIM OF
WIDOW SHUT OFF.—The addition of the words of the statute "to
cease at his death," as applied to a disability pension to an officer,
adds nothing to its meaning, unless it be to cut off the widow's claim
to any pension. It must be given this effect.

ID.—HEARING OF WIDOW'S PETITION PROPERLY DISALLOWED.—The peti-
tion of the widow for a pension, after the cessation of her husband's
disability pension by his death, was properly disallowed by the police
commissioners, without any hearing thereon.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Percy V. Long, City Attorney, and John F. English, Assistant City Attorney, for Appellants.

Breen & Kelly, for Respondent.

HALL, J.—Plaintiff is the widow of one John Clark Edwards, deceased, formerly a member of the police department of the city and county of San Francisco. She presented a petition to the board of police commissioners, who under the law constitute the board of trustees of the police relief and pension fund, praying to be allowed a pension, as the widow of a member of the said police department killed while in the performance of his duty.

The board, without taking any evidence, denied her petition. She then filed a petition in the superior court for a writ of mandate to compel said board to hear her petition and to take evidence thereon. To this petition the board filed a general demurrer, which was overruled, and upon the defendants refusing to plead further, judgment went for plaintiff. From this judgment defendants in due time appealed to this court.

Respondent annexed to, and made a part of, her complaint in the superior court, a copy of her petition to the board of police commissioners.

It is the contention of appellants that the statement of facts in her said petition to the board showed that she was not entitled to any pension, and that it was therefore not the duty of said board to receive any testimony thereon, but that they properly disposed of the matter by denying her petition.

From her said petition it clearly appears, among other things, that her late husband, on the third day of March, 1900, while in the performance of his duty as a police officer, was injured; that on January 21, 1907, almost seven years after such injury, he was retired by reason of such injury upon a pension of $50 per month, which continued to the day of his death, which occurred January 30, 1909, almost nine years

after receiving the injury. And upon her information and belief she alleged in her petition that the "said injuries so received as aforesaid . . . by said John Clark Edwards were the direct and proximate cause of the death of the said John Clark Edwards."

Appellants contend, first, that the widow of one who prior to his death is retired from the department for injuries, and receives a pension therefor until his death, is not entitled to a pension as such widow; and, second, that one who does not die for nearly nine years after being injured is not, within the meaning of the language of the charter, "killed while in the performance of his duty."

Provision is made in the charter of the city and county of San Francisco for pensions to members of the police department and certain of their relatives. These provisions are contained in sections 2, 3, 4 and 6 of chapter X of article VIII.

It is under section 4 that plaintiff claims. This section, so far as it is pertinent to this case, provides that: "The commissioners shall, out of the police relief and pension fund, provide for the family of any officer, member or employee of the department who may be killed in the performance of his duty, as follows: First—Should the deceased be married, his widow shall as long as she shall remain unmarried, be paid a monthly pension equal to one-half of the salary attached to the rank of decedent at the time of his death." Then follow provisions for other dependent relatives in case decedent leaves no widow.

Assuming, for the purpose of discussing the first point made by appellant, that a person may be said to be killed while in the performance of his duty, who does not die for approximately nine years after receiving the injury, it is insisted that the language of the other sections relating to pensions limit the general language of section 4, and make it plain that the widow of an officer who, before his death, has drawn a disability pension, is not within the benefits of section 4.

Section 2 provides for the retirement and pensioning of any infirm or disabled member of the department who has arrived at the age of sixty-five years, and concludes as follows: "No such pension shall be paid unless such person has been an active member of the department for twenty years continuously next preceding his retirement, *and the same shall cease at his death.*"

Section 3 makes provision for the retirement and pensioning of any member of the department disabled by reason of any bodily injury received in the performance of his duty; *the pension "to be paid to him during his life and to cease at his death."*

Section 6 provides for pensions to certain dependent relatives of any member who, after ten years' service, shall die from natural causes, and concludes as follows: "But the provisions of this section shall not apply to any member of the department who shall have received any pension under the terms of this chapter."

The concluding clause of this section, and the language that we have italicized in sections 2 and 3, to the effect that the pensions therein referred to shall cease at the death of the member, indicate a general purpose that relatives of members who have been retired and themselves received pensions shall not be entitled to pensions.

But especially significant are the words in section 3, "to cease at his death." It was under this section that John Clark Edwards became entitled to draw the pension that he received because of his injuries. His right to a pension was entirely the creature of this section, and by the terms of the section it was *to be paid to him during his life.* It was quite unnecessary to add the words "and to cease at his death," if the only purpose was to terminate his pension at his death. A pension granted to a person necessarily terminates at his death, in the absence of words indicating the contrary; and especially is this so when the pension is "to be paid to him during his life." The only effect the words in section 3 "to cease at his death" can possibly have is to operate in restraint of some general language elsewhere contained, under which some relative might claim a pension upon the death of the disabled member. This general language is found in section 4.

In both sections 3 and 4 the charter-makers were providing for conditions growing out of injuries received by a member of the department in the performance of his duty. Such injuries might result in death at once or within a reasonable time. Such condition was provided for in section 4; by allowing a pension to the widow or other dependent relative. On the other hand, such injuries might result in disability for a greater or less time. For this condition they provided in sec-

tion 3 a pension for the disabled member, "to be paid to him during his life"; and to prevent the claim of a pension by his widow or other relatives under the claim that such member was "killed while in the performance of his duty," they added the clause, "and to cease at his death." This is the only construction of the law that will give any force or effect to the clause just quoted. It may work an inequality or hardship in some cases, but there are few laws that do not.

It is a cardinal rule of construction of statutes that some effect must be given to every word and clause, if possible. Words in a statute should never be construed as unnecessary and surplusage if a reasonable construction can be adopted which will give force to and preserve all the words of the statute. (*Gates* v. *Salmon,* 35 Cal. 576, [95 Am. Dec. 139]; *Langenour* v. *French,* 34 Cal. 92; *Appeal of Houghton,* 42 Cal. 35; *People* v. *Perkins,* 85 Cal. 509, [26 Pac. 245]; *Leversee* v. *Reynolds,* 13 Iowa, 310; 36 Cyc. 1128.)

The addition of the words "to cease at his death" to the clause in section 3, awarding a disability pension to a policeman, "to be paid to him during his life," adds nothing to the meaning of the section unless it be to cut off just such a claim as is made by plaintiff in this case. We think it must be given just this effect, and for this reason the petition that plaintiff presented to the board of police commissioners showed that she was not entitled to any pension, and it was unnecessary for the board to hear evidence thereon, and it could properly dispose of her application without such hearing.

The views we have come to upon the first point discussed probably make it unnecessary to determine whether or not one who lives for approximately nine years after being injured while in the performance of his duties, and then dies as the result of such injuries, can be said to have been "killed while in the performance of his duties" within the meaning of the police pension provisions of the charter. But, as the point made by the appellant in this regard, if well founded, is decisive of this appeal, it is not improper to pass upon it.

The word "killed" as used in the statute conveys the idea of a death resulting from violence or external force. The petition of plaintiff nowhere alleges in terms that her late husband was killed while in the performance of his duties. It very properly simply alleges the actual facts, and thus

clearly shows that he was injured while in the performance of his duties, and that such injuries resulted in his disability and retirement from service, upon a pension, about seven years later, and his death about two years still later. Do these facts show that he was "killed while in the performance of his duties" within the meaning of the statute? The word "while" as used in the section has relation to the time during which the duties are being performed. Doubtless, it is not necessary that both the injuries and death occur while the officer is performing his duty as such officer, for we think that, both in popular language and legal phraseology, one may be said to have been killed while in the performance of his duty who is injured while thus employed and soon thereafter dies from such injury.

"In popular language and in legal phraseology, for some purposes, a party is said to have killed one on whom he has inflicted a blow of which the wounded person soon dies." (*Martin* v. *Copiah County*, 71 Miss. 407, [15 South. 73].) But there must be some limit to the time one may survive an injury received *while* in the performance of his duty, beyond which, if his death result, it cannot be said he was *killed while in the performance of his duty*.

Looking to the analogy presented by the law of murder, it is the rule both of the statute of this and, we believe, of all the states, as well as by the common law, that a person charged with murder cannot be held responsible for the death of his victim unless the death occur within a year and a day from the infliction of the injury. However, we are not called upon, by the facts of this case, to determine how soon one must die from injuries received while in the performance of his duty to come within the meaning of the words "killed while in the performance of his duty." It is sufficient to say that one who is injured while in the performance of his duties, and is not even disabled thereby for approximately seven years, and is then retired on a disability pension, and dies at the expiration of two years more while in retirement on such pension, cannot be said to have been *killed while in the performance of his duty*.

For this reason the board of commissioners properly dismissed plaintiff's petition without taking evidence thereon.

For the reasons above set forth the judgment is reversed, with directions to the trial court to sustain defendants' demurrer to plaintiff's complaint.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 29, 1911, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 28, 1911.