[No. G033682. Fourth Dist., Div. Three. Dec. 17, 2004.]

MICHAEL J. FREI et al., Plaintiffs and Appellants, v.
WALTER T. DAVEY, JR., et al., Defendants and Respondents.

**COUNSEL**

Raitt & Associates and G. Emmett Raitt, Jr., for Plaintiffs and Appellants.

Law Offices of Thomas E. Elenbaas and Thomas E. Elenbaas for Defendants and Respondents.

**OPINION**

**FYBEL, J.—**

### INTRODUCTION

Mediation using a neutral professional is often an effective and efficient way to resolve legal disputes. The California Legislature,[1] businesses, consumers, and lawyers have all recognized the benefits of mediation.

Many written contracts include provisions requiring the parties to mediate before filing a lawsuit or arbitration proceeding, and conditioning recovery of attorney fees by a prevailing party on an attempt to mediate. The standard form residential purchase agreement used in California has a recently added clause providing that a prevailing party in litigation or arbitration who *refused* a request to mediate made before the commencement of such proceedings is barred from recovering attorney fees. This is the first published case in which this provision has been applied.

 In accordance with the parties' express agreement, we hold that the prevailing parties are barred from recovering attorney fees because they refused a request to mediate. The trial court's finding that they did not refuse such a request is not supported by substantial evidence. The new provision barring recovery of attorney fees by a prevailing party who refuses a request for mediation means what it says and will be enforced. Therefore, we reverse the order awarding attorney fees.

---

[1] See, e.g., Code of Civil Procedure section 1775.

SUMMARY OF THE AGREEMENT'S MEDIATION PROVISIONS

On September 5, 2000, Michael J. Frei and Teresa D. Frei (the Freis) made a written offer to purchase the house owned by Walter T. Davey, Jr., and Patricia Ann Davey (the Daveys). The Daveys submitted a written counteroffer on September 11, which the Freis accepted on September 12. Coldwell Banker was the real estate agent for both the Freis and the Daveys in the transaction. On October 11, the Daveys cancelled the residential purchase agreement (the Agreement).

Paragraph 22 of the Agreement contains a provision permitting recovery of attorney fees by a prevailing party: "In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney's fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A."

Paragraph 17 of the Agreement obligates the parties to attempt mediation of any dispute before litigation or arbitration is commenced, and paragraph 17A specifically bars a party who refuses to participate in mediation from later recovering attorney fees: "*A. MEDIATION*: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraphs 17C and D below. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. [¶] . . . [¶] *C. EXCLUSIONS FROM MEDIATION AND ARBITRATION*: The following matters are excluded from Mediation and Arbitration: (i) A judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code § 2985; (ii) An unlawful detainer action; (iii) The filing or enforcement of a mechanic's lien; (iv) Any matter which is within the jurisdiction of a probate, small claims, or bankruptcy court; and (v) An action for bodily injury or wrongful death, or any right of action to which Code of Civil Procedure § 337.1 or § 337.15 applies. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a violation of the mediation and arbitration provisions. [¶] *D. BROKERS*: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, provided either or both Brokers shall have agreed to such mediation

or arbitration, prior to or within a reasonable time after the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement."

### PROCEDURAL HISTORY

The Freis sued the Daveys for specific performance in December 2000. The Daveys cross-complained against the Freis and against Coldwell Banker. The complaint and the cross-complaint were bifurcated for purposes of trial. Following a bench trial on the Freis' complaint, judgment was entered granting the Freis specific performance of the sale of the house. The Daveys appealed, and we issued an unpublished opinion reversing the judgment with directions to enter judgment in favor of the Daveys. (*Frei v. Davey* (June 4, 2003, G030822).) Judgment in favor of the Daveys was entered in October 2003.

The Daveys filed two motions for attorney fees: (1) attorney fees incurred on appeal, in the amount of $37,950, and (2) attorney fees incurred in the trial court proceedings, in the amount of $119,935. The trial court granted both motions. The Freis timely appealed the order awarding attorney fees.

The court's comments at the hearing on the motions for attorney fees explained the rationale underlying its order:

"Mr. Raitt [counsel for the Freis]: You're granting motions for attorney fees. I was wondering what the court's view was on the question of the mediation provision in the contract.

"The Court: I reviewed it and there wasn't a refusal to mediate. That's paragraph 17.

"Mr. Raitt: Yes.

"Mr. Elenbaas [counsel for the Daveys]: Yes, your honor.

"The Court: Yeah. I was satisfied that that argument wasn't well taken. It only disallows attorney fees where the party files the action without mediating or refuses to mediate, and there was no evidence to support a finding that the defendants refused to mediate, and the fees are appropriate."

The Daveys' cross-complaint against Coldwell Banker was tried to a jury, which found in favor of Coldwell Banker. (The Daveys' cross-complaint against the Freis was resolved in the Freis' favor on a motion for summary

adjudication.) The trial court awarded Coldwell Banker $130,500 in attorney fees, pursuant to the terms of the Agreement and a separate broker's agreement between the Daveys and Coldwell Banker. On appeal, we affirmed the judgment in favor of Coldwell Banker. We reduced the attorney fees award, and affirmed the order awarding attorney fees as so modified. (*Davey v. Watson* (July 29, 2004, G031454) [nonpub. opn.].)

## DISCUSSION

### I.

PARAGRAPH 22 OF THE AGREEMENT PROVIDES THE LEGAL BASIS FOR RECOVERY OF ATTORNEY FEES.

The legal basis for an award of attorney fees is reviewed de novo. (*Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 767 [11 Cal.Rptr.3d 885].) Here, the Daveys sought attorney fees under paragraph 22 of the Agreement, which reads: "In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney's fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A."

The Freis' complaint for specific performance was an action between the buyers and the sellers arising out of the Agreement, and the Daveys were the prevailing parties in that action. Paragraph 22 therefore provides a legal basis for awarding attorney fees to the Daveys, if they satisfied the conditions set forth in paragraph 17A of the Agreement.

### II.

THERE WAS NO SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING THE DAVEYS DID NOT REFUSE TO MEDIATE.

#### A. *THE ISSUE.*

We next turn to the question whether the Daveys refused the Freis' request to mediate the dispute. Any award of attorney fees to the Daveys was contingent on their compliance with the mediation provision found in paragraph 17A of the Agreement: "*MEDIATION*: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement or any resulting transaction, before resorting to arbitration or court action, subject to paragraphs 17C and D below. . . . If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate

after a request has been made, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action." Thus, if the Daveys refused the Freis' request for mediation, the Daveys may not recover their attorney fees, despite the fact they were the prevailing parties in the litigation.

As we shall discuss, this case is a textbook example of why agreements for attorney fees conditioned on participation in mediation should be enforced. It is also a graphic illustration of a case that should have been mediated at an early stage when the parties were only $18,540 plus expenses apart in their settlement positions. Hundreds of thousands of dollars in attorney fees have been spent and the parties have litigated through two trials and three appeals. The lesson? There is a good reason the mediation clause was in the Agreement, and the legal consequences specified by the Agreement for refusing to mediate will be enforced.

### B. *THE STANDARD OF REVIEW.*

"The standard of review on issues of attorney's fees and costs is abuse of discretion. The trial court's decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence." (*Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545 [3 Cal.Rptr.3d 604], fns. omitted.)

However, the appellate court does not merely rubber-stamp the trial court's decision. "Our search for substantial evidence in support of the judgment 'does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment. The Court of Appeal "was not created . . . merely to echo the determinations of the trial court. A decision supported by a mere scintilla of evidence need not be affirmed on review." [Citation.] "[I]f the word 'substantial' [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable . . . , credible, and of solid value. . . ." [Citation.] The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record. [Citation.] While substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding.' (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [29 Cal.Rptr.2d 191].)" (*Carter v. CB Richard Ellis, Inc.* (2004) 122 Cal.App.4th 1313, 1328 [19 Cal.Rptr.3d 519].)

## C. *DID THE DAVEYS REFUSE THE FREIS' REQUEST TO MEDIATE?*

In a declaration filed in support of the motion for attorney fees, Mr. Davey acknowledged receiving a letter from the Freis' attorney dated November 30, 2000, which included a demand to mediate pursuant to paragraph 17 of the Agreement. A demand for mediation certainly meets the Agreement's requirement of a "request" to mediate. Mr. Davey declared he and his wife "did not immediately respond to the demand for mediation." The Freis filed their lawsuit on December 13 and served the Daveys with the summons and complaint on December 22.

On January 5, 2001, the Freis' attorney sent another letter in which he said he had not received any response from the Daveys regarding mediation, and asked the Daveys to advise him as soon as possible if they wished to mediate. The Freis' attorney granted the Daveys two extensions of time to respond. The Freis' attorney submitted a declaration stating that on January 22, 2001, the Daveys' counsel told him "the Daveys were not interested in mediating the dispute." The Freis' attorney's declaration also stated that on February 27, 2001, the Daveys' attorney called to say that although he had recommended mediation, the Daveys "were not interested in doing so." Neither the Daveys nor their counsel disputes these descriptions of the Daveys' actions and inaction.

Mr. Davey also declared that as of January 5, 2001, he believed "mediation would be fruitless given the Freis' intransigence." Mr. Davey stated he believed the parties' own settlement negotiations "had essentially accomplished, through the letters and other communications, what a mediation was intended to do—that we made a concerted and good faith attempt to settle the case." Mr. Davey declared he believed his duty to mediate had terminated once the Daveys cancelled the Agreement, meaning they did not need to respond to the Freis' request for mediation.

Was this course of conduct a refusal by the Daveys of the Freis' request to mediate? Yes. There is no substantial evidence supporting the trial court's finding that the Daveys did not refuse to mediate. "To refuse is to decline the acceptance of something offered, or to fail to comply with some requirement." (*People ex rel. Finigan v. Perkins* (1890) 85 Cal. 509, 511 [26 P. 245].) Webster's Third New International Dictionary (1993) page 1910 defines "refuse" as "to decline to accept" and "to show or express a positive unwillingness to do or comply with." Black's Law Dictionary (8th ed. 2004) page 1307 defines "refusal" as "[t]he denial or rejection of something offered or demanded."

Under all of these definitions, the Daveys' course of conduct constituted a refusal to respond to a clear and unequivocal request to mediate. As explained below, the Daveys' excuses are unavailing. After the lawsuit was filed, the Freis continued to request mediation and extended the Daveys' time to respond to the request. Finally, the Daveys, through their attorney, refused to mediate. There is no evidence to the contrary, and the record does not support the trial court's finding the Daveys did not refuse a request to mediate.

### D. THE DAVEYS' REFUSAL TO MEDIATE WAS NOT EXCUSED.

The Daveys raise a number of arguments why their refusal to mediate should be excused. Each of these arguments necessarily recognizes the Daveys did, in fact, refuse to mediate.

#### 1. The request for mediation was effective.

The Daveys argue the request for mediation in the November 30, 2000 letter from the Freis' counsel was sandwiched between counsel's threats, and therefore was not effective. This argument assumes that if the request for mediation was contained in one letter, and other litigation and settlement demands were contained in another, the request for mediation would be effective, but by including both in one letter it was not. This assumption has no basis. In the real world, lawyers' letters often contain arguments to support their clients' various positions and demands—as here—in compliance with contractual terms. There is no reason to require separate letters for each subject.

#### 2. Negotiations between the parties are not mediation.

The Daveys also argued they substantially complied with the mediation provision by making "a concerted and good faith attempt to settle the case," which, they say, is all mediation would have accomplished. Communications between the parties or their counsel regarding settlement are not the same as mediation. In mediation, a neutral third party analyzes the strengths and weaknesses of each party's case, works through the economics of litigation with the parties, and otherwise assists in attempting to reach a compromise resolution of the dispute. (*Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424, 433 [132 Cal.Rptr.2d 362] ["The economic inefficiency of this result may have been avoided if, prior to judicial proceedings, a disinterested mediator had explained to [the parties] the costs of litigating the

dispute through to a judgment or a final resolution by an appellate court"]; see also Code Civ. Proc., § 1775.[2])

3. *The lack of a perceived likelihood of success from mediation did not excuse the Daveys from complying with the Agreement's terms.*

The Daveys also argue they should be excused from their refusal to mediate because, they contend, mediation would not have been successful. Mr. Davey asserted that when he received the Freis' counsel's November 30 letter requesting mediation, he "did not feel that mediation was likely to be fruitful." After a meeting between the Freis and the Daveys on December 4, 2000, "it was apparent to [the Daveys] that mediation would be of no benefit."

Yet the Daveys admitted they originally proposed to settle the dispute by completing the sale of the property and having Coldwell Banker credit its commission of approximately $18,540 to the Daveys. In his November 30, 2000 letter, the Freis' counsel proposed to settle the matter by completing the sale of the property, holding the Coldwell Banker commission in escrow, and having the Daveys reimburse the Freis' additional escrow expenses and the cost of redrawing the Freis' loan documents. So, the parties' settlement offers were $18,540 plus expenses apart before the lawsuit was filed. Especially given the parties' respective settlement positions and the requirements of the Agreement, the Daveys should have agreed to mediate; they did not, and are responsible for the consequences.

Since the lawsuit was filed, the parties have collectively spent in excess of $500,000 in attorney fees to pursue the case in the trial court and on appeal. The Daveys spent more than $157,885, and the Freis spent more than

---

[2] In establishing a pilot program requiring mediation, the California Legislature made the following findings: "(a) The peaceful resolution of disputes in a fair, timely, appropriate, and cost-effective manner is an essential function of the judicial branch of state government under Article VI of the California Constitution. [¶] (b) In the case of many disputes, litigation culminating in a trial is costly, time consuming, and stressful for the parties involved. Many disputes can be resolved in a fair and equitable manner through less formal processes. [¶] (c) Alternative processes for reducing the cost, time, and stress of dispute resolution, such as mediation, have been effectively used in California and elsewhere. In appropriate cases mediation provides parties with a simplified and economical procedure for obtaining prompt and equitable resolution of their disputes and a greater opportunity to participate directly in resolving these disputes. Mediation may also assist to reduce the backlog of cases burdening the judicial system. It is in the public interest for mediation to be encouraged and used where appropriate by the courts. [¶] (d) Mediation and similar alternative processes can have the greatest benefit for the parties in a civil action when used early, before substantial discovery and other litigation costs have been incurred. Where appropriate, participants in disputes should be encouraged to utilize mediation and other alternatives to trial for resolving their differences in the early stages of a civil action." (Code Civ. Proc., § 1775.)

$127,287.89 in attorney fees on the specific performance claim.[3] In connection with the Daveys' cross-complaint, Coldwell Banker paid its counsel $89,075.[4] While we do not know the specific amount, we can fairly assume the Daveys paid their attorney a similar amount to prosecute the cross-complaint. No party recovered any damages, and the sale of the house was not compelled. A mediator's explanation of the process and estimate of likely expenses, which would have taken place before or shortly after the litigation began, could have permitted the parties, in their own self-interest, to reach a compromise agreement.

4. *Assuming the Agreement provides a reasonable time period to respond to a request for mediation, the Daveys failed to respond within a reasonable time.*

The Daveys argue the Agreement does not specify the time when the mediation must take place, and therefore a reasonable time for performance must be allowed. (*Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1043 [9 Cal.Rptr.2d 381, 831 P.2d 821].) In the trial court, the Daveys contended the Agreement does not specify when a party must respond to the request for mediation, which is the real issue. To recover attorney fees under the Agreement, a party cannot commence litigation before attempting to resolve the matter through mediation. A party refusing a request to mediate must be subject to substantially the same time constraints. Accordingly, a party responding to a request to mediate must do so within a reasonable time.

We need not determine whether the time between the November 30, 2000 letter and either the filing or service of the complaint was reasonable. For even after the complaint was filed and served, the Freis' counsel continued to offer mediation as a means of resolving the parties' dispute. A period of almost two months between the November 30, 2000 letter and the final deadline for agreeing to mediate (January 29, 2001) was reasonable. The Daveys failed to agree to mediate within that period.

Moreover, the Daveys affirmatively rejected the request to mediate on January 22, 2001, when their attorney advised the Freis' attorney the Daveys "were not interested in mediating the dispute." While a party must be given a

---

[3] The Daveys requested $37,950 for attorney fees on the earlier appeal, and $119,935 for attorney fees incurred in the trial court. The Freis were originally awarded $127,287.89 in attorney fees as part of the judgment we reversed. Both sides have incurred additional attorney fees pursuing this appeal.

[4] The trial court ordered the Daveys to pay Coldwell Banker's attorney fees in the amount of $130,500, based on provisions in the Agreement and the written broker's agreement. On appeal, we reduced that award to $89,075. (*Davey v. Watson, supra,* G031454.) The parties again incurred attorney fees in connection with that appeal.

reasonable time to respond to a contractual request for mediation, as a practical matter that time ends when the party rejects the request.

A mediation was conducted shortly before the initial trial date, on November 21, 2001, at the request of cross-defendant Coldwell Banker, but was not successful. We reject the Daveys' argument that a delay of almost one year between the request for mediation in the Freis' attorney's November 30, 2000 letter, and the mediation conducted on November 21, 2001, is reasonable. The Daveys' refusal to mediate could not be cured one year later. The purpose of the early mediation requirement is to minimize the costs of litigation and arbitration. To allow a party to wait one year until the eve of trial to accede to a request for mediation would defeat that purpose. Of course, there is value to conducting mediations, settlement conferences or other methods of alternative dispute resolution at various stages in litigation, whether before, during, or after trial. But when a contract conditions the recovery of attorney fees on a party's willingness to participate in mediation before the litigation begins, the window for agreeing to mediate does not remain open indefinitely. The fact the mediation conducted shortly before the initial trial date was unsuccessful does not alter this analysis. Indeed, the mediation in November 2001 might have been unsuccessful precisely because, by then, the parties had invested so much money in attorney fees and their positions had become entrenched.

For the same reasons, we reject the Daveys' argument that they should be able to recover their attorney fees incurred after the mediation in November 2001. The language of paragraph 17A of the Agreement is all or nothing. Even though the Daveys participated in mediation a year later, the fact remains they initially refused to do so.

5. *The filing of the Freis' lawsuit did not "negate" the Agreement's mediation provision.*

The Daveys argue the Freis "negated" the mediation provisions of the Agreement by initiating the lawsuit in order to record a lis pendens against the property. Paragraph 17C of the Agreement provides: *"EXCLUSIONS FROM MEDIATION AND ARBITRATION:* The following matters are excluded from Mediation and Arbitration: (i) A judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code § 2985; (ii) An unlawful detainer action; (iii) The filing or enforcement of a mechanic's lien; (iv) Any matter which is within the jurisdiction of a probate, small claims, or bankruptcy court; and (v) An action for bodily injury or wrongful death, or any right of action to which Code of Civil Procedure § 337.1 or § 337.15 applies. The filing of a court action to enable the recording of a notice of

pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a violation of the mediation and arbitration provisions."

"The words of a contract are to be understood in their ordinary and popular sense." (Civ. Code, § 1644; see also *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505]; *Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197–1198 [32 Cal.Rptr.2d 144] ["We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made"].) The language of paragraph 17C of the Agreement expressly provides the act of filing an action in court so a notice of pendency may be recorded does not violate paragraph 17A; it does not "negate" the mediation provisions.

### 6. *Existing case law is consistent with our holding.*

The cases interpreting the former version of the residential purchase agreement's mediation provisions, on which the Daveys rely, are consistent with our holding the Daveys cannot recover their attorney fees because they refused to mediate. In each of the three cited cases interpreting the effect of mediation provisions on recovery of attorney fees, the court was considering a mediation provision that applied only to the party initiating the litigation, not the party defending against it. The contractual language being interpreted by those courts read, in relevant part: " 'If any party commences an action based on a dispute or claim to which this paragraph applies, without first attempting to resolve the matter through mediation, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action.' " (*Blackburn v. Charnley, supra,* 117 Cal.App.4th at p. 767; *Leamon v. Krajkiewcz, supra,* 107 Cal.App.4th at p. 432; *Johnson v. Siegel* (2000) 84 Cal.App.4th 1087, 1100 [101 Cal.Rptr.2d 412].)

In *Blackburn v. Charnley, supra,* 117 Cal.App.4th 758, 761–762, two different sets of buyers signed separate purchase agreements with a real estate developer-builder to purchase houses. The purchase agreements provided a party would not be entitled to recover attorney fees in litigation arising out of the agreement if that party did not first attempt to resolve the dispute through mediation. (*Id.* at p. 767.) After lengthy delays before construction began, and after the developer sought to renegotiate a higher price, the buyers sued for specific performance and recorded notices of a pending action. (*Id.* at pp. 762–763.) Specific performance was ordered in favor of the buyers, and they were later awarded attorney fees. (*Id.* at p. 765.)

The Court of Appeal concluded the buyers did not violate the purchase agreements' mediation provisions by filing their lawsuits and recording notices of pending action without first mediating their claims. (*Blackburn v. Charnley, supra,* 117 Cal.App.4th at p. 768.) "Here, the parties filed a lawsuit and recorded a lis pendens on their lots in order to protect their homes from resale to a bona fide purchaser in a booming real estate market and to preserve their right to seek specific performance. Under the plain and unambiguous provisions of the purchase agreements, they were exempt from the mediation requirement." (*Ibid.*) Thus, *Blackburn v. Charnley* stands for the proposition that a party initiating a legal proceeding to enable the recordation of a notice of pendency of an action may recover attorney fees despite a failure to request mediation, because the party is *exempt* from the requirement, not because the requirement has been removed from the agreement. It certainly did not address, much less resolve, the issue before us arising out of the Daveys' refusal to mediate under the Agreement.

In *Leamon v. Krajkiewcz, supra,* 107 Cal.App.4th 424, 428–429, the seller cancelled a residential purchase agreement, claiming she had only signed it as a result of the real estate agent's threats. The buyers filed a small claims action for breach of contract, and the seller filed a complaint in superior court to quiet title and for infliction of emotional distress. (*Id.* at p. 429.) A jury found there was no valid contract between the buyers and seller for the sale of the property, and judgment was entered in favor of the seller. (*Id.* at p. 430.) The seller sought recovery of attorney fees pursuant to the residential purchase agreement. (*Ibid.*) The trial court granted a motion to tax the attorney fees as an item of costs. (*Ibid.*) The appellate court affirmed, based on the purchase agreement's language that a party otherwise entitled to recover attorney fees pursuant to the agreement may not recover those fees if that party commences an action " 'without first attempting to resolve the matter through mediation.' " (*Id.* at p. 432.) "We conclude that the enforcement of the condition precedent to the recovery of attorney fees does not conflict with the concept of mutuality of remedy under the facts of this case. [¶] First, mutuality of remedy exists because the [buyers] could not have commenced their action in superior court and recovered attorney fees without first seeking mediation. In that sense, the imposition of a condition precedent on the recovery of attorney fees is mutual and reciprocal. To hold otherwise would violate the concept of mutuality of remedy by requiring the party who argues the contract is valid to comply with conditions not imposed on the party who asserts the contract is invalid. [¶] . . . [¶] In addition, the public policy of promoting mediation as a preferable alternative to judicial proceedings is served by requiring the party commencing litigation to seek mediation as a condition precedent to the recovery of attorney fees." (*Id.* at p. 433, fn. omitted.) The court noted, "Nor do we express any view on whether paragraph 21A permits attorney fees to be awarded to a prevailing *defendant*

who refused a plaintiff's request to mediate because only the party *commencing* an action is required to seek mediation." (*Id.* at p. 432, fn. 6.)

In *Johnson v. Siegel, supra,* 84 Cal.App.4th 1087, 1090–1091, the buyer filed a lawsuit seeking rescission of the real estate purchase agreement and damages for fraud and negligent misrepresentation based on the sellers' failure to disclose flooding problems with the house. The trial court granted summary judgment because the buyer failed to arbitrate his claims, as required by the purchase agreement. (*Id.* at pp. 1091–1092.) The sellers then sought recovery of attorney fees pursuant to the terms of the real estate purchase agreement. (*Id.* at pp. 1090, 1100.) The buyer opposed the motion, claiming that because he lost his right to recover attorney fees by failing to mediate his claim before filing the lawsuit, principles of mutuality barred the sellers from recovering their attorney fees. (*Id.* at p. 1100.)

The Court of Appeal disagreed, and affirmed the order granting the sellers their attorney fees. "Mutuality of remedy is not at issue here, as [the buyer] contends. The parties' real estate purchase agreement provided that in any action between the buyer and seller, the prevailing party would be entitled to recover attorney fees, unless *that* party commenced an action without first attempting to resolve the matter through mediation. The provision is mutual and reciprocal because it would apply equally to either party. Had the [sellers] initiated an action without first attempting to resolve the matter through mediation, it would have applied to them. It was [the buyer], however, who filed an action without first attempting to resolve the matter through mediation. By filing the action, [the buyer] forfeited his right to recover attorney fees. [¶] [The buyer] makes much of the fact that the [sellers] did not initiate mediation. However, their failure to do so is irrelevant to the attorney fee provisions of the parties' real estate purchase agreement. Seeking mediation is a condition precedent to the recovery of attorney fees *by the party who initiates the action.*" (*Johnson v. Siegel, supra,* 84 Cal.App.4th at pp. 1100–1101.)

At root, each of these cases holds that the language of the former version of the residential purchase agreement means what it says. So, too, the revised language in the Agreement means what it says—a party refusing a request to mediate a dispute that ripens into litigation may not recover attorney fees at the conclusion of the litigation, even if that party is the prevailing party.

### DISPOSITION

The postjudgment order is reversed. Appellants to recover costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.