Filed 7/7/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COASTLINE JX HOLDINGS LLC, | |
| Cross-complainant and Appellant, | G059552 |
| v. | (Super. Ct. No. 30-2011-00497143) |
| | O P I N I O N |
| STEPHEN H. BENNETT, | |
| Cross-defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Sherri L. Honer, Judge. Affirmed.

Frandzel Robins Bloom & Csato, Hal D. Goldflam; Greines, Martin, Stein & Richland, Cynthia E. Tobisman and Alana Rotter for Cross-complainant and Appellant.

Miller Shah and Ronald S. Kravitz for Cross-defendant and Appellant.

\* \* \*

## INTRODUCTION

In December 2019, Coastline JX Holdings LLC (Coastline), assignee of a judgment creditor's interest in a money judgment entered against Stephen H. Bennett, served on Seamount Financial Group, Inc. (Seamount) a notice of levy on Bennett's assets in an individual retirement account and a profit-sharing plan.  After the trial court ordered Seamount to liquidate Bennett's interest in both assets and turn them over to the levying officer to be delivered to Coastline, Bennett filed a motion for reconsideration of the trial court's order, under Code of Civil Procedure section 1008.[1]  In his motion, Bennett first argued to the trial court that the profit-sharing plan was protected from levy because it qualified as a plan under the Employee Retirement Income Security Act of 1974 (ERISA; 29 U.S.C. § 1001 et seq.).  He also filed a motion to tax costs.

The trial court denied Bennett's motion, but informed the parties that, under its inherent authority, it would reconsider its prior order regarding the distribution of the profit-sharing plan only (not the individual retirement account) because the court previously had not considered the implications of it being an ERISA-compliant plan. After ordering supplemental briefing and setting a hearing on the court's own motion, the court reversed its prior decision and concluded the profit-sharing plan was exempt from levy due to preemption by ERISA.  The court ordered Coastline to reimburse the profit-sharing plan any funds it had received under the court's prior order.  The trial court also denied Bennett's motion to tax costs and the request for attorney fees that was included in his supplemental briefing.

Coastline and Bennett each appealed.  We affirm the trial court's order and reject each of the parties' arguments on appeal.

As to Coastline's appeal, we hold the trial court timely exercised its inherent authority to reconsider its order regarding the profit-sharing plan.  We further

---

[1]  All further code references are to the Code of Civil Procedure unless otherwise specified.

hold, as a matter of first impression, that the profit-sharing plan here was automatically exempt from levy under both ERISA and California law because (1) it is an ERISA-compliant pension plan which is not assignable as a matter of federal law (29 U.S.C. § 1056(d)(1)); and (2) under California's Enforcement of Judgments Law (§ 680.010 et seq.), property that is not assignable is not subject to California's enforcement of judgment procedures and is thus automatically exempt from levy.  (See §§ 695.030, 704.210.)  There is no conflict, therefore, between ERISA and California law here. Accordingly, ERISA preemption, upon which the trial court based its ruling, is not at issue.  The trial court had authority, in reversing its prior order, to direct Coastline to return to the plan the funds that had been ordered delivered to it in contravention of federal and state law.

In his appeal, Bennett argues the trial court abused its discretion by denying his request for attorney fees.  Bennett was not entitled to such an award for several reasons, not the least of which is that the trial court *denied* his motion for reconsideration. The trial court's reasons for denying the motion to tax costs were supported by the record and its ruling did not otherwise constitute an abuse of discretion.  Bennett forfeited his argument challenging the court's ruling as to the individual retirement account because he did not file a timely notice of appeal from the court's prior ruling ordering its liquidation.

## FACTS AND PROCEDURAL HISTORY

### I.

### COASTLINE SERVED THE NOTICE OF LEVY ON SEAMOUNT

In June 2016, an amended judgment was entered in favor of CU Bancorp and against, inter alia, Bennett in the amount of $398,351.52.[2] After succeeding CU Bancorp following a merger, PacWest Bancorp assigned all of its rights, title, and interest in the amended judgment to Coastline, which had replaced PacWest Bancorp/CU Bancorp as judgment creditor in the amended judgment.

As of September 2019, a total of $619,583.61 remained unpaid and owed to Coastline on the amended judgment. At Bennett's debtor examination in November 2019, Bennett confirmed he had an interest in an individual retirement account and in a profit-sharing plan. He stated the individual retirement account was held "under the name of Pershing, but the investment advisor is Seamount Financial" and the profit-sharing plan was held by Seamount. Bennett failed to produce documents regarding these assets in response to Coastline's subpoena.

In December 2019, Coastline served a "Notice of Levy under Writ of Execution, a Memorandum of Garnishee and a Writ of Execution" (the notice of levy) on Seamount to levy all property in which Bennett had an interest, including any simplified employee pension individual retirement accounts or profit-sharing accounts. The total amount of the levy at that time was $619,635.61.

After being served with the notice of levy, Seamount identified an individual retirement account in Bennett's name (IRA); Seamount's broker-dealer, H. Beck, Inc., placed a hold on the IRA, which at the time had a total value of $100,717.69.

---

[2] A detailed summary of the facts and procedure of the underlying litigation leading up to entry of the amended judgment is set forth in the opinion issued in the companion case *Coastline JX Holdings LLC v. Letwak & Bennett* (May 16, 2022, G059646) [nonpub. opn.]).

Seamount also discovered Bennett had an interest in an employer sponsored profit-sharing plan which was offered in connection with Bennett's accounting business and was titled "Letwak & Bennett, An Accountancy Corporation Profit-sharing Plan" (PSP). Seamount did not have information regarding the number or identities of the PSP's participants, or the amount of Bennett's interest in the PSP.[3]

Later that month, at the continued judgment debtor's examination, Bennett produced some documents that were responsive to Coastline's subpoenas and confirmed he had an interest in the IRA and the PSP.

## II.

### SEAMOUNT QUESTIONED THE EXTENT OF BENNETT'S INTEREST IN THE PSP AND WHETHER THE IRA AND THE PSP MIGHT BE EXEMPT FROM LEVY

In January 2020, Seamount confirmed to Coastline's counsel that it had received the notice of levy and had frozen the assets of the IRA, but did not have any information regarding Bennett's interest in the PSP. Seamount also informed Coastline's counsel that Bennett had claimed to have not received the notice of levy, asserted that the IRA and the PSP were exempt from levy, and provided Seamount with a copy of a nonalienation of benefits clause from the PSP's plan documents.

Coastline provided Seamount with a copy of the proof of service on Bennett of the notice of levy and advised Seamount that whether the assets might be exempt was an issue for the court to decide and that Seamount had a duty to turn over the funds in the IRA to the levying officer. After that conversation, H. Beck effected "manual restrictions on" the PSP pending resolution of Seamount's questions about whether to release funds from it.

On January 15, 2020, Coastline's counsel received a claim of exemption form in which Bennett asserted the IRA and the PSP were exempt from levy under

---

[3] "As of December 31, 2019, the PSP contained money market funds and equities, and a nominal fixed income position."

5

sections 703.080 and 704.115. On January 21, 2020, however, the Orange County Sheriff's Department (OCSD) returned Bennett's claim of exemption paperwork, unprocessed, explaining: "According to the process server's proof of service, you were notified by mail on 12/16/2019. The deadline to file a claim of exemption on this levy was 5:00 [p.m.] on 12/31/2019."

The following day, Coastline sent Seamount a letter demanding that Seamount cause the IRA and a portion of the PSP, in an amount sufficient to satisfy the total amount specified in the notice of levy, to be liquidated and all proceeds delivered to the levying officer. Coastline's counsel enclosed a copy of the letter from the OCSD rejecting Bennett's claim of exemption as untimely.

Bennett later advised Seamount that he owned approximately $70,000 of the PSP's total value and four other individuals owned the remainder of the PSP's assets. Bennett provided no documentation to support the assertions he made to Seamount.

### III.

### SEAMOUNT SOUGHT LEAVE TO INTERVENE IN THE ACTION; THE TRIAL COURT DENIED SEAMOUNT LEAVE TO INTERVENE AND ORDERED SEAMOUNT TO LIQUIDATE THE IRA AND BENNETT'S INTEREST IN THE PSP FOR LEVY

On January 24, 2020, Seamount gave notice of its ex parte application for leave to file a motion to intervene in the underlying court action for the purpose of obtaining a court order on the proper disposition of the disputed assets. In response, Coastline stated it opposed Seamount's request to the extent it sought interpleader of the IRA but did not oppose Seamount's request to interplead the PSP. Bennett advised Seamount he did not oppose intervention but opposed interpleading.

Bennett did not appear at the February 4, 2020 hearing on Seamount's ex parte application. At that hearing, the court deemed the ex parte application a motion, and set the motion for hearing on March 12, 2020. Bennett was served via overnight mail on the motion to intervene set for March 12, 2020. The court ordered the IRA to remain

6

frozen pending further ruling of the court. That same day, three of the PSP's other participants filed third party claims.

Bennett informed Coastline's counsel that he would attend the hearing but he did not appear at the March 12, 2020 hearing.

Following the hearing, the trial court denied Seamount's motion to intervene and issued an order (the March 2020 Order) stating in relevant part:

"1. IT IS HEREBY ORDERED that Seamount's Motion to Intervene is DENIED.

"2. IT IS FURTHER ORDERED, with respect to the Notice of Levy upon the interests of Judgment Debtor Stephen H. Bennett ('Bennett') in the Simplified Employee Pension Individual Retirement Arrangement maintained by Seamount as Account No. xxx-xx3511 ('IRA'), and in the profit-sharing plan maintained by Seamount as Account No. xxx-xx9018 ('PSP'), which Notice of Levy Coastline caused to be served on Seamount on December 16, 2019 (the 'Levy), as follows:

"A. As to the IRA, Seamount shall immediately proceed to liquidate all securities and other non-cash assets held in the IRA, and shall, within 10 days of this Order, deliver all of the proceeds of such liquidation, together with all cash held in the IRA, to the Orange County Sheriff's Department ('Sheriff'). The court finds judgment debtor Bennett failed to timely file a claim of exemption with respect to said funds.

"B. As to the PSP,

"i. the Court accepts the Stipulation [of the third party claimants regarding the PSP], which Stipulation provides, among other things: (a) that for purposes of the Levy, the value of Bennett's interest in the PSP is deemed to be $60,000.00; and (b) that said third parties agree that irrespective of the fact that their interests are based on a draft reconciliation as of December 31, 2019, and irrespective of any fluctuations in value that may have occurred since December 31, 2019, their respective claims do not include Bennett's $60,000 interest; [¶] . . . [¶]

7

"iii. the Court finds that, based on the admission of Bennett in his February 6, 2020 e-mail to Coastline's counsel of record . . . , Bennett's interest in the PSP for purposes of the Levy is $60,000.00; and

"iv. Seamount shall, within ten days of this Order, deliver to the Sheriff the amount of $60,000.00 cash from the cash assets of the PSP. If the PSP does not have cash assets greater than or equal to $60,000.00, Seamount shall immediately liquidate a sufficient amount of the securities and/or other non-cash assets held in the PSP which, when added to cash assets of the PSP, will equal at least $60,000.00 cash, and shall, within 10 days of this Order, deliver the sum of $60,000.00 cash from the PSP to the Sheriff. Other than the $60,000.00 from the PSP that Seamount shall deliver to the Sheriff, Seamount shall not transfer any other assets of the PSP (whether securities, other non-cash assets, and/or cash) to the Sheriff pursuant to the Levy or the Modification of Levy issued by the Sheriff on March 3, 2020.

"C. As to all of the funds ordered to be delivered by Seamount (or any entity of behalf of Seamount, including, but not limited to, Pershing LLC) to the Sheriff pursuant to Sections 2.A. and 2.B. of this Order, above, the Sheriff shall deliver them to Coastline as soon as reasonably possible after the Sheriff's receipt of said funds, payable as follows [to Coastline's counsel].

"D. The Sheriff is ordered to deliver to [Coastline's counsel] all funds it receives pursuant to this Order and in connection with the Levy, minus any processing fees, notwithstanding the Third Party Claims . . . which Third Party Claims are resolved in their entirety as set forth herein."

At no time before the March 2020 Order did any party raise the issue that the PSP might be automatically exempt under ERISA. Pursuant to the March 2020 Order, on April 28, 2020, Coastline received $121,964.71 from the OCSD.

8

## IV.
### BENNETT FILED A MOTION FOR RECONSIDERATION OF THE MARCH 2020 ORDER AND A MOTION TO TAX COSTS

On June 1, 2020, Bennett filed a motion for reconsideration of the March 2020 Order under section 1008. Bennett also filed a motion to tax Coastline's claimed costs. A copy of the memorandum of costs to which Bennett's motion responds is not included in our record. Our record does include a subsequently amended memorandum of costs after judgment, dated and served on July 2, 2020, in which Coastline sought a total of $103,993.80 in costs, including $95,145.75 in attorney fees incurred from September 1, 2019 through April 30, 2020, against Bennett. The amended memorandum of costs acknowledged the payment in the total amount of $139,247.71 (including returns on levy process and direct payments) that had been received by Coastline and applied to the interest accrued on the balance of the amended judgment.

## V.
### THE TRIAL COURT DENIED BENNETT'S MOTION FOR RECONSIDERATION BUT EXERCISED ITS INHERENT AUTHORITY TO RECONSIDER THE MARCH 2020 ORDER AS TO THE PSP ONLY

On July 6, 2020, the trial court denied Bennett's motion for reconsideration of the March 2020 Order. Although it deemed the motion for reconsideration to have been timely filed, the court found Bennett had failed to present new or different facts as required by section 1008.

In its minute order, the court stated it would exercise its inherent authority, however, and potentially reconsider its ruling with respect to the distribution of $60,000 from the PSP only. The court explained that before issuing the March 2020 Order, (1) Bennett had not appeared at the hearing "despite being placed on notice of Coastline's request to order disbursement of the funds"; (2) Bennett had not made a timely claim of exemption; (3) no argument had been raised that the PSP was automatically exempt from levy without the need to make a claim; (4) the third party claimants had stipulated to

9

Bennett's admitted $60,000 interest in the PSP; and (5) no party present at the hearing expressed opposition to Coastline's requested distribution of that amount from the PSP. Consequently, the court explained it had not considered whether the PSP was an ERISA compliant plan or whether such a plan is automatically exempt from levy at the time it issued the March 2020 Order.

In the minute order, the court also stated it did "NOT reconsider its ruling with respect to the IRA." The court found that "[p]rior to the March 12[] Order, Bennett knew or should have known that the court would consider issues beyond the notice of motion to permit Seamount to intervene in this action."[4]

The court continued the hearing on its own motion to reconsider the March 2020 Order, and ordered the parties to brief the following issues:

"1. Whether a timely claim of exemption must be filed with respect to an ERISA compliant plan, or whether the exemption is automatic. (For purpose of this issue, it is assumed the PSP is ERISA compliant.)

"2. If automatic, whether the PSP at issue is actually ERISA compliant."

Both Coastline and Bennett filed supplemental briefs. In support of his supplemental brief, Bennett attached a copy of the PSP Basic Plan Document, which contains a nonalienation of benefits provision. Bennett also included a request for an award of prevailing party attorney fees in his brief.

At a hearing on August 10, 2020, the trial court read its tentative ruling granting reconsideration of its ruling on the PSP on the ground the PSP was automatically

---

[4] The court observed that Bennett had been served with the February 2020 order requesting supplemental briefing on Seamount's motion as well as Coastline's supplemental brief and proposed order, both of which requested an order for the liquidation of the IRA, the liquidation of $60,000 from the PSP, and the delivery of those funds to the levying officer. The court found Bennett had been provided the requisite opportunity to brief and present evidence at the March 12 hearing but failed to appear or address Coastline's request. The court noted: "There was no surprise. The Order cannot be characterized as a surprise if Bennett had been diligent."

10

exempt under ERISA. After entertaining argument on the tentative ruling from counsel, the trial court took the matter under submission.

## VI.

### THE TRIAL COURT CONCLUDED THE PSP IS EXEMPT FROM LEVY UNDER ERISA AND ORDERED REIMBURSEMENT TO THE PSP; THE COURT ALSO DENIED BENNETT'S MOTION TO TAX COSTS AND HIS REQUEST FOR ATTORNEY FEES

In its minute order dated September 21, 2020 (the September 2020 Order), the trial court reiterated it had denied Bennett's motion for reconsideration. The court ruled that it had exercised its inherent authority, reconsidered its ruling with respect to the $60,000 distribution from the PSP, and found those funds to be exempt under ERISA which the court concluded preempted California law. The court ordered that "to the extent the judgment creditor had received a distribution of $60,000 from the PSP, judgment creditor is ordered to reimburse that amount to the PSP." The court denied Bennett's motion to tax costs and also denied Bennett's request in his supplemental brief for an award of prevailing party attorney fees.

Although the court had denied reconsideration of the March 2020 Order as to the IRA, the court stated in its minute order that Bennett had failed to establish that the IRA was exempt from levy. The court explained: "[D]espite judgment debtor's claim . . . that the funds in the SEP-IRA were rolled over from the PSP account, the exhibit attached in support of his contention demonstrates otherwise. . . . To the contrary, at page 3, section 3 of the form, the judgment debtor indicates the source of the funds was from 'Income from Earnings.' Thus, even had judgment debtor filed a timely claim of exemption regarding the SEP-IRA, which he did not, the judgment debtor has failed to establish the funds were rolled over from the PSP."

Coastline and Bennett each filed a timely notice of appeal.

11

## DISCUSSION

## I.

### COASTLINE'S APPEAL

### A.

### *The Trial Court Had Inherent Authority to Reconsider the March 2020 Order Regarding the PSP*

Coastline contends the trial court erred by reconsidering the March 2020 Order because it had lost jurisdiction to do so. Coastline's argument is without merit.

### 1.

### *Overview of Section 1008 and the Trial Court's Inherent Authority to Reconsider Prior Rulings on Its Own Motion*

Section 1008 limits the circumstances in which a party may seek reconsideration of a court's ruling. Section 1008, subdivision (a), provides in part: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and *based upon new or different facts, circumstances, or law*, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order." (Italics added.) The trial court denied Bennett's motion for reconsideration of the March 2020 Order regarding the PSP on the ground it was not based upon new or different facts, circumstances, or law. Bennett did not appeal from the March 2020 Order and that order denying the motion for reconsideration was not appealable. (*Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577.)

Although section 1008 limits the circumstances in which a party may seek reconsideration, it "do[es] not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107 (*Le Francois*).) "[A] trial court has inherent power to reconsider an interim ruling on its own motion. [Citation.] This authority derives from the

12

judiciary's fundamental, constitutionally mandated function to resolve specific controversies between parties." (*Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1248 (*Brown*).)

Furthermore, "it is immaterial what may have triggered a trial court's insight that its interim order might be erroneous: 'We cannot prevent a party from communicating the view to a court that it should reconsider a prior ruling (although any such communication should never be ex parte). We agree that it should not matter whether the "judge has an unprovoked flash of understanding in the middle of the night" [citation] or acts in response to a party's suggestion. If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief.' (*Le Francois, supra*, 35 Cal.4th at p. 1108; see, e.g., *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1308 [although motion for reconsideration that is unsupported by new legal authority or new evidence violates § 1008, such a motion may inspire the trial court to reconsider its previous decision on its own motion].)" (*Brown, supra*, 47 Cal.4th at p. 1249.) The Supreme Court in *Le Francois* further explained that, out of concerns for procedural fairness, a trial court that intends to exercise its inherent power to reconsider a prior ruling must provide the parties "notice that it may do so and a reasonable opportunity to litigate the question." (*Le Francois, supra*, at p. 1097; see *Brown, supra*, 47 Cal.4th at p. 1248.)

Here, in its minute order dated July 6, 2020, the trial court denied Bennett's motion for reconsideration on the ground Bennett failed to present new or different facts as required under section 1008. Citing *Le Francois*, the trial court stated in its minute order it "exercises its inherent authority to potentially reconsider its ruling" with regard to the PSP only. The court ordered the parties to brief (1) "[w]hether a timely claim of exemption must be filed with respect to an ERISA compliant plan, or whether the exemption is automatic" and (2) "[i]f automatic, whether the PSP at issue is actually

13

ERISA compliant." No party argues the trial court failed to provide proper notice and the opportunity to litigate the issues the trial court wished to reconsider.

2.

*The Trial Court Had Jurisdiction to Reconsider the*<br>*March 2020 Order on Its Own Motion*

Coastline argues the trial court lacked jurisdiction to reconsider the March 2020 Order because, by the time the parties had completed supplemental briefing and the court decided to reverse its prior ruling on the ground the PSP was an ERISA-compliant plan that was exempt from levy, the March 2020 Order was final and beyond the court's inherent authority to reconsider. Coastline's argument is without merit.

The trial court gave the parties notice of its intention to potentially reconsider the March 2020 Order with regard to Bennett's interest in the PSP in July. The court held a hearing on August 10 at which it read its tentative ruling that it would grant its own motion for reconsideration of the March 2020 Order and conclude the PSP was automatically exempt from levy by operation of ERISA preemption. After entertaining the parties' counsel's arguments on the tentative ruling, the court took the matter under submission.

Coastline acknowledges in its opening brief that the time to appeal the March 2020 Order did not expire until August 26, 2020. The March 2020 Order, therefore, was not final when the court initially invoked its inherent power to reconsider that order or when the court announced its tentative decision on reconsideration that the PSP was automatically exempt from levy. Citing *Le Francois, supra*, 35 Cal.4th at page 1105, footnote 4, the appellate court in *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1313, footnote 9, explained: "[T]he original order was *not* yet 'final' at the time the judge reconsidered it, because the time to appeal it had not yet expired. Thus, this appeal does not present, and we therefore do not decide, the issue whether a trial court can reconsider an appealable order on its own motion after the time to appeal

14

from that order has expired. This circumstance may well have been the issue the Supreme Court had in mind when it indicated in *Le Francois* that ' . . . final orders . . . present quite different concerns' from interim orders."

In its opening brief, Coastline suggests that the trial court had not effected a reconsideration of its March 2020 Order until September 2020, when it finally ruled it would reverse the part of the March 2020 Order addressing the PSP. Coastline argues that because the September 2020 Order issued *after* the deadline to appeal the March 2020 Order the trial court had lost its authority to reconsider its ruling.

We construe the language of the court's July 6, 2020 minute order that it "*potentially* reconsiders its ruling with respect to distribution of $60,000 from the profit-sharing plan" (italics added) as the court then commencing the reconsideration process and informing the parties that, after it completed that process, it might reverse (potentially) the relevant portion of the March 2020 Order.[5] Our understanding of the court's statement is supported by the court's actions in the same minute order of ordering the parties to provide supplemental briefs answering specific questions relevant to the court's reconsideration of the distribution of the PSP issue and by setting a further hearing on the court's motion. As the trial court in July 2020 commenced its reconsideration of the PSP portion of the March 2020 Order on its own motion well before the August 26 deadline for filing an appeal from that order, the trial court had jurisdiction to proceed. In any event, the court clearly had reconsidered the March 2020 Order by the August 10 hearing as evidenced by the court announcing its tentative ruling reconsidering the status of the PSP as automatically exempt from levy. As both the trial court's announcement of its intent to reconsider the March 2020 Order and its tentative ruling reversing the part of that order as to whether the PSP might be levied upon

---

[5] At the July 6, 2020 hearing, the court stated, "So, my inherent authority, I'm telling you what issues that *I'm going to be considering* under my inherent authority and it is very limited."

15

occurred before the deadline for filing an appeal from the March 2020 Order, we do not need to address the extent to which a trial court has inherent authority to reconsider an order after the time to appeal that order has passed.

**B.**

***Because the PSP Was Not Assignable as a Matter of Federal Law, It Was Not Subject to Enforcement of the Amended Judgment Pursuant to Section 695.030***

For the reasons we will explain, the trial court correctly determined that the PSP was automatically exempt from levy. Our conclusion, however, is not based on ERISA preemption as relied upon by the trial court, but on the nonassignability of that asset under federal law, which section 695.030 places outside the reach of enforcement of judgment procedures under California law.

1.

*Standard of Review and Rules of Statutory Interpretation*

Our analysis of the September 2020 Order in which the court concluded the PSP was automatically exempt from levy depends on our interpretation of relevant sections in the Code of Civil Procedure, addressing the enforcement of money judgments, as well as portions of ERISA itself. "'We review de novo the issues of the application of a statutory exemption to undisputed facts [citation], and interpretation of the statutes.'" (*Kilker v. Stillman* (2015) 233 Cal.App.4th 320, 329 (*Kilker*).)

"'[O]ur fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] In this search for what the Legislature meant, '[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory

16

construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.'" (*Martinez v. Combs* (2010) 49 Cal.4th 35, 51.)

## 2.

### *The PSP Was Not Subject to Coastline's Efforts to Enforce the Amended Judgment*

As a general rule, under California's Enforcement of Judgments Law (§ 680.010 et seq.), "all property of the judgment debtor is subject to enforcement of a money judgment" (§ 695.010, subd. (a)) through a writ of execution (§ 699.710). "'The California Constitution, however, requires the Legislature to protect "a certain portion" of a debtor's property from forced sale. [Citation.] The purpose of this requirement is to protect enough of the debtors' property from enforcement to enable them to support themselves and their families, and to help shift the cost of social welfare for debtors from the community to judgment creditors. [Citations.] [¶] To that end, California has enacted a "comprehensive and precisely detailed scheme" governing enforcement of money judgments. [Citations.] The kinds and degrees of property exempt from levy are [generally] described in . . . sections 704.010 through 704.210. These provisions relate to property of the debtor that would ordinarily be subject to enforcement of a money judgment by execution or otherwise, but for the statute allowing the debtor to retain all or part of it to protect himself and his family.'" (*Kilker, supra*, 233 Cal.App.4th at pp. 329-330.)[6]

"'[A]dditional exemptions are provided by other California statutes and by federal law.'" (*Kilker, supra*, 233 Cal.App.4th at p. 330.) Section 703.030, subdivision (a), provides: "An exemption for property that is described in this chapter or in any other statute as exempt may be claimed within the time and in the manner prescribed in the

---

[6] "'[A]lthough the burden of proof lies with the party claiming the exemption, exemption statutes are generally construed in favor of the debtor.'" (*Kilker, supra*, 233 Cal.App.4th at p. 330.)

17

applicable enforcement procedure. If the exemption is not so claimed, the exemption is waived and the property is subject to enforcement of a money judgment." Profit-sharing plans and certain individual retirement accounts are described in section 704.115, subdivision (a), which is included in the same chapter as section 703.030. Therefore, generally speaking, and absent the application of another statute, a profit-sharing plan or an individual retirement plan is exempt if the debtor makes a claim of exemption; if the debtor fails to make a claim, the exemption is forfeited.

Regardless of the nature of the property, section 695.030 provides that property not assignable or transferable is not subject to enforcement of a money judgment and is automatically exempt—regardless of whether the debtor makes a claim of exemption. 695.030, subdivision (a), provides: "Except as otherwise provided by statute, property of the judgment debtor that is not assignable or transferable *is not subject to enforcement of a money judgment*." (Italics added.) Furthermore, section 704.210 makes clear that "[p]roperty that is not subject to enforcement of a money judgment is *exempt without making a claim*." (Italics added.)

The question then becomes whether the PSP was assignable. If answered in the affirmative, it is undisputed Bennett failed to timely make a claim of exemption and therefore forfeited the argument the PSP was exempt from levy. If answered in the negative, the PSP was automatically exempt from enforcement of the amended judgment notwithstanding Bennett's failure to timely claim an exemption. We turn to federal law to answer this question.

Following the trial court's request for supplemental briefing on the issue, the court concluded the PSP is an ERISA-compliant plan. Coastline does not challenge that finding on appeal. ERISA provides unequivocally that pension benefits under a qualified plan are not assignable. Section 1056(d)(1) of title 29 of the United States Code provides: "Each pension plan shall provide that benefits provided under the plan may not

18

be assigned or alienated."[7]  A profit-sharing plan is a pension plan for purposes of ERISA.  (Cooke, ERISA Practice and Procedure (2d. rev. 2022), § 2:4.)[8]

In accordance with the nonalienation mandate of ERISA, section 14.01 of the PSP's "Basic Plan Document," entitled "NONALIENATION OF BENEFITS," states in part:  "[T]he Trust Fund *shall not be subject to any form of attachment, garnishment, sequestration or other actions of collection afforded creditors of the Company, Participants or Beneficiaries under the Plan* and all payments, benefits and rights *shall be free from attachment, garnishment, trustee's process, or any other legal or equitable process available to any creditor of such Company, Participant or Beneficiary*.  Except

---

[7]  Subdivision (d)(2) of section 1056 of title 29 of the United States Code provides:  "For purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before [September 2, 1974].  The preceding sentence shall not apply to any assignment or alienation made for the purposes of defraying plan administration costs.  For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 of Title 26 (relating to tax on prohibited transactions) by reason of section 4975(d)(1) of such Code."

[8]  "A pension plan, then, is a formal plan or program whereby funds are accumulated to pay for retirement income or other deferred income to employees of an employer, payable at a future date, generally at the normal retirement age as specified in the plan.  The plan, which constitutes a separate entity from the employer, generally accumulates funds by means of specified employer contributions (although some plans may allow employee contributions), which it invests and accumulates with interest plus any returns from the investments.  Payments or distributions may take a variety of forms, including a monthly benefit, or they may be made in the form of a lump sum distribution, *which is usually the case in a profit-sharing plan, which for purposes of the Employee Retirement Income Security Act of 1974 (ERISA) is a pension plan*.  ERISA, however, does not mandate any particular form of payment."  (Cooke, ERISA Practice and Procedure, *supra*, § 2:4, italics added.)

19

as provided in Section 14.01(b),[9] *no Participant or Beneficiary shall have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingently or otherwise, under the Plan*, except the right to designate a Beneficiary.  Any reference to a Participant or Beneficiary shall include an Alternate Payee or the Beneficiary of an Alternate Payee."  (Italics added.)

As the PSP was not assignable under ERISA, it was not subject to enforcement of the amended judgment under section 695.030 and was automatically exempt from levy regardless of the fact that Bennett failed to make a timely claim of exemption.

The trial court found the PSP automatically exempt because ERISA, which prohibits attachment of funds in a qualified pension plan, preempts California law which conditions the exempt status of certain pension plans on the debtor timely filing a claim of exemption.  (See 29 U.S.C. §1144(a) ["Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section [1003(a) of this title] and not exempt under section [1003(b) of this title]"]; see Cooke, ERISA Practice and Procedure, *supra*, § 2.11 ["The basic analysis of whether a state law is preempted by [ERISA] requires judicial analysis of three elements:  (1) whether the law relates to any employee benefit plan; (2) whether the state law attempts to reach in one way or another the terms and conditions of an employee benefit plan; and (3) whether the state law regulates insurance, banking, or securities or is a generally applicable criminal law"].)

---

[9]  Section 14.01(b) of the PSP's Basic Plan document provides exceptions to the general rule, that are not relevant here, and that are in accordance with cited provisions of the United States Code involving Qualified Domestic Relations Orders, federal tax levies, actions to recover benefit overpayments, and settlements between the participant and the Secretary of Labor or the Pension Benefit Guaranty Corporation.

20

We do not need to decide the extent to which ERISA preempts the California Enforcement of Judgments Law because there is no conflict between federal and state law here. As discussed *ante*, section 695.030 expressly excludes property that is not assignable from California's enforcement of judgment procedures. Thus, the trial court correctly ruled in the September 2020 Order that the PSP was automatically exempt from levy.

3.

*Coastline's Supplemental Brief*

In response to our invitation to file a supplemental brief addressing section 695.030's applicability to this case, Coastline filed a supplemental letter brief in which it argued: "[O]n its face, section 695.030 is subject to exceptions: '*Except as otherwise provided by statute*,' property that 'is not assignable or transferrable is not subject to enforcement of a money judgment.' [Citation.] [¶] Section 704.115 is the 'otherwise provided by statute' when it comes to the profit-sharing plan at issue here: Section 704.115 states that private retirement plans—including '[p]rofit-sharing plans designed and used for retirement purposes'—are '*exempt*.' (§ 704.115, subds. (a)(2), (b), italics added.) It does *not* say 'exempt without making a claim.' The exemption, thus, must be timely claimed, or 'the exemption is waived and the property is subject to enforcement of a money judgment.' (§ 703.030, subd. (a).) [¶] Section 704.115 does not mention any carve-outs. Unlike section 695.030, it does not say '[e]xcept as otherwise provided by statute.' Nor does it say 'except for property that is not assignable.' Rather, its text unambiguously applies to Bennett's profit-sharing plan."

In other words, Coastline argues that sections 695.030, 703.030, subdivision (a), and section 704.115 should be interpreted together to provide that nonassignable property is *not* subject to California's enforcement of judgments procedure *unless* it is a profit-sharing plan (whether an ERISA-compliant pension plan or not) in

21

which case it is *only* exempt from levy if the debtor makes a timely claim of exemption. We disagree with this interpretation.

Section 704.115, subdivision (a) simply defines the term "private retirement plan" and subdivision (b) states that funds held by such a plan are exempt from levy. It is section 703.030, subdivision (a), that states property declared exempt in statutes that include section 704.115 must be timely claimed exempt by the debtor or else the property loses its exempt status and "is subject to enforcement of a money judgment." But section 703.030 goes on to state, in subdivision (b), that "[e]xcept as otherwise specifically provided by statute, property that is described in this chapter *or in any other statute as exempt without making a claim* is not subject to any procedure for enforcement of a money judgment." (Italics added.) ERISA at section 1056(d)(1) of title 29 of the United States Code falls within the "any other statute" provision of section 703.030 that renders an ERISA-compliant pension plan exempt without making a claim, because it outright prohibits states from attaching ERISA-compliant pension plan benefits. (See *Mackey v. Lanier Collection Agency & Service, Inc.* (1988) 486 U.S. 825, 836 ["Where Congress intended in ERISA to preclude a particular method of state-law enforcement of judgments, or extend anti-alienation protection to a particular type of ERISA plan, it did so expressly in the statute. Specifically, ERISA § 206(d)(1) [29 U.S.C. § 1056(d)(1)] bars (with certain enumerated exceptions not applicable here, e.g. QDRO's) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans"]; see *Guidry v. Sheet Metal Workers Pension Fund* (1990) 493 U.S. 365, 371-372, fns. omitted ["The view that the statutory restrictions on assignment or alienation of pension benefits apply to garnishment is consistent with applicable administrative regulations, with the relevant legislative history, and with the views of other federal courts. It is also consonant with other statutory provisions designed to safeguard retirement income"].)

22

Coastline cites no legal authority and we have found none in which an ERISA-compliant pension plan such as the one here was held subject to levy to enforce a civil judgment. We find no error.

**C.**

### The Trial Court Did Not Err by Ordering Coastline to Reimburse the PSP for Funds Received from the PSP Under the Portion of the March 2020 Order It Reversed

Coastline argues that notwithstanding the court's reversal in the September 2020 Order of its decision in the March 2020 Order that Bennett's interest in the PSP was subject to levy, the trial court did not have the authority to order Coastline to return funds it had already received from the PSP, to the PSP.

Section 187 provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." In *Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 863-864, the California Supreme Court, citing section 187, explained: "Trial courts have inherent and statutory authority to devise and utilize procedures appropriate to the specific litigation before them. [Citations.] This authority '"arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function."' . . . [W]e have held that trial courts may, when necessary, 'follow provisions of the Code of Civil Procedure which are harmonious with the objects and purposes of the proceeding although those provisions are not specifically made applicable by the statute which creates the proceeding.'" (See *Wesson v. Staples the Office Superstore, LLC* (2021) 68 Cal.App.5th 746, 763 ["Courts may exercise their inherent authority to fashion

23

procedures and remedies as necessary to protect litigants' rights and the fairness of trial"].)

As discussed *ante*, the time to appeal from the March 2020 Order had not yet expired when the trial court exercised its inherent authority to reconsider that order with regard to the PSP. The court therefore had jurisdiction when it reviewed and ultimately reversed its decision that Bennett's interest in the PSP was subject to levy and ordered Coastline to reimburse the PSP the amount of funds it had received as a result of the court's prior error.

Coastline identifies no statute in the California Enforcement of Judgments Law, or otherwise, or any Rule of Court, that addresses much less limits how the trial court might remedy the problem that arose here—the release of exempt funds from an ERISA-compliant pension plan to a creditor due to an erroneous (and subsequently reversed) court order.

Coastline cites a single authority in support of its argument, *Adir Internat., LLC v. Superior Court* (2013) 216 Cal.App.4th 996 (*Adir*), to conclude the trial court erred by directing the return of the levied funds to the PSP. *Adir* is inapplicable.

In *Adir, supra*, 216 Cal.App.4th 996, a judgment creditor prevailed at trial and obtained a writ of execution that was filed with the county sheriff. (*Id.* at p. 998.) The sheriff levied the judgment debtor's bank account, which thereby created an execution lien on the levied property. (*Id.* at pp. 998-999.) The debtor filed a notice of appeal and an appeal bond, which extinguished the execution lien and required the return of the levied funds to the debtor. (*Id.* at p. 999.) But the debtor had not taken the proper steps to ensure the sheriff would release the funds back to the debtor by seeking an order from the court recalling and/or quashing the writ of execution. (*Id.* at pp. 999-1000.) As a result, the sheriff released the funds to the creditor. (*Id.* at p. 1000.) The debtor then requested that the trial court require the creditor to return the disbursed funds, but the court found it had no authority to do so, and the Court of Appeal agreed. (*Id.* at p. 1002.)

24

*Adir* addresses whether a trial court has the authority to order the return of property that was disbursed by the sheriff in the regular course of levying funds pursuant to a writ of execution, but should not have been because the debtor had perfected an appeal. The *Adir* court concluded the trial court does not have such authority.

*Adir* does not address a trial court's authority to order the return of exempt funds to a third party, much less an ERISA-compliant pension plan, that the court itself had previously and, by its own determination, wrongfully ordered released to the creditor.

The trial court did not err by ordering the return of any funds Coastline received from the PSP to the PSP.

## II.

### BENNETT'S CROSS-APPEAL

### A.

### *Bennett Was Not Entitled to an Award of Attorney Fees*

Bennett argues the trial court abused its discretion by failing to award him prevailing party attorney fees because he ultimately "succeeded in persuading the Court to order the return of the Plan benefits." For several reasons, Bennett was not entitled to an award of attorney fees; although not before us, such an award to Bennett, if it had been given, would likely have constituted an abuse of discretion under the circumstances of this case.

First, Bennett did not request attorney fees in his motion for reconsideration or in any other noticed motion. He first requested an award of attorney fees in his supplemental briefing invited by the court at the July 6, 2020 hearing, which invitation did not include a request the parties brief any issue related to attorney fees.

Second, the trial court *denied* Bennett's motion for reconsideration. The fact the trial court, on its own motion, reconsidered the March 2020 Order regarding the PSP and ultimately found the PSP to be ERISA-compliant and thus exempt from levy, does not entitle Bennett to award of prevailing party attorney fees. At the July 6, 2020

25

hearing, the trial court explained it was reconsidering the March 2020 Order as to the PSP in connection with "whether the Court's ruling might have a different impact on the actual plan itself. I'm not as concerned with Mr. Bennett as I am concerned with how this might affect the plan itself."

Third, contrary to Bennett's argument in his opening brief on cross-appeal, Bennett did not successfully bring an action under ERISA so as to vest the trial court with discretion to award him prevailing party attorney fees pursuant to section 1132(g) of title 29 of the United States Code, even if he had brought a noticed motion under that code section.[10] As discussed *ante*, Bennett first requested such an award in his supplemental briefs filed in response to the trial court's invitation following the announcement it was reconsidering the March 2020 Order as to the PSP. Bennett has failed to provide meaningful analysis supporting his contention that a request for attorney fees was made "[i]n any action under this title" within the meaning of section 1132(g) of title 29 of the United States Code.

"'Appellate briefs must provide argument and legal authority for positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.] 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.'" (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

Because Bennett has failed to address the threshold issue and explain why attorney fees might be awarded under section 1132(g) of title 29 of the United States Code here, given the procedural posture of this case, we do not need to consider the five

---

[10] "In any action under this title . . . by a participant . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." (29 U.S.C. § 1132(g).)

factors discussed in Bennett's appellate briefs that courts have used in ERISA actions to evaluate whether attorney fees should be awarded.

Fourth, Bennett did not appear in court when Seamount appeared ex parte seeking to intervene given the conflicting information it had received regarding whether to liquidate the IRA and the PSP and turn over the proceeds to the levying officer. Notwithstanding having been provided notice, Bennett chose not to appear at the hearing or offer supplemental briefing invited by the trial court to determine, inter alia, the proper disposition of those assets. Not until after the March 2020 Order was issued did Bennett, in a motion for reconsideration, first raise the issue that the PSP was a plan protected under ERISA and was automatically exempt from levy—an issue that had not before been brought to the court's attention. Bennett's failure to engage and timely raise dispositive issues in the court's resolution of Seamount's motion resulted in errors and costly delay.

Fifth, in a footnote in his opening brief on appeal, Bennett argues for the first time in this action that the trial court should have awarded Bennett attorney fees based on the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). There are many problems with this argument, but we will focus on one: "'"'"[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." Thus, "we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived."'"'"' (*Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013.) Bennett's argument he was entitled to attorney fees under PAGA has been forfeited.

Sixth, the idea of awarding Bennett attorney fees here is particularly troublesome given Bennett's long history of thwarting discoverable information about the PSP at his various debtor's examination hearings and in response to subpoenas which

27

resulted in all parties incurring needless attorney fees and costs to obtain and confirm information relevant to the lawful enforcement of the amended judgment.

In what can be described, at best, as Bennett having taken a lackadaisical and often unresponsive approach to defending against Coastline's enforcement of the amended judgment, and at worst, his employing an improper strategy of gamesmanship and delay with regard to Coastline's efforts, Bennett should be discouraged, and not rewarded. The trial court did not err by refusing to grant Bennett's request for an award of attorney fees in this case.

**B.**

***The Trial Court Did Not Abuse its Discretion by Denying Bennett's Motion to Tax Costs***

1.

*Governing Legal Principles and Standard of Review*

Section 685.040 provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." Here, the amended judgment included an award of attorney fees to the judgment creditor.

Section 685.070 provides a judgment creditor may claim enumerated postjudgment enforcement costs specified in subdivision (a) by filing a memorandum of costs pursuant to subdivision (b), or by noticed motion under section 685.080, subdivision (a). Here, after the court issued the March 2020 Order, Coastline filed an amended memorandum of costs.

28

"'The standard of review on issues of attorney's fees and costs is abuse of discretion.  The trial court's decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice.  If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence.'" (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512.)

We similarly review the denial of a motion to tax costs for abuse of discretion.  (*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 52.)  "'The trial court's exercise of discretion in granting or denying a motion to tax costs will not be disturbed if substantial evidence supports its decision.'" (*Ibid*.)

2.

*The Trial Court's Ruling*

In the September 2020 minute order, the trial court explained its reasons for denying Bennett's motion to tax the costs claimed by Coastline as follows:

"'The "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" [Citation.]  'Under the lodestar method, the trial court must first determine the lodestar figure—the reasonable hours spent multiplied by the reasonable hourly rate—based on a careful compilation of the time spent and reasonable hourly compensation of each attorney involved in the presentation of the case.' [Citation.]  'The reasonable hourly rate is that prevailing in the community for similar work.' [Citation.] "'[A] reasonable hourly rate is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case.'" [Citation.]

29

"Here, judgment creditor billed at the following rate: Hal Goldfalm, Esq.: $455.00; Brad Becker, Esq.: $385.00; Ronnie Auceda, Esq.: $210.00. Plaintiff did not challenge these rates. They appear to be standard in the community.

"Moreover, the hours spent appear reasonably necessary to the enforcement of the judgment. This case has been pending for nearly a decade. Both sides have vigorously litigated the issues. A party '"cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."' [Citation.]

"'In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice.' [Citation.]

"Judgment debtor's main opposition to the attorney fees is that the attorney fees incurred to recover funds from the PSP and SEP-IRA was improper and unnecessary. Although the court ultimately reconsidered its ruling allowing recovery from the PSP, it upheld its ruling regarding the SEP-IRA. Moreover, the issues regarding propriety of levying on the PSP were not as straightforward as judgment debtor contends. The issues were novel and complex. Accordingly, the court denies the judgment debtor's motion to tax."

3.

*The Trial Court's Findings Were Supported by the Record and the Court Did Not Otherwise Abuse Its Discretion*

Bennett does not argue the trial court applied the wrong law or made factual findings unsupported by the record. Instead, he argues the trial court's ruling shows the court "did not fully recognize the unreasonableness of specifically allowing Coastline costs spent to bully Seamount and illegally garnish funds from the ERISA Plan," although Coastline "knew or should have known that its garnishment of pension plan assets violates ERISA."

30

The trial court's rejection of this argument is supported by the record. No party in this case brought the issue of the PSP being automatically exempt as a potential ERISA-qualified plan to the court's attention until Bennett raised it in his motion for reconsideration. Nothing in the record shows that before filing his motion for reconsideration, Bennett raised this issue to Coastline, Seamount, or any other party, perhaps because he too did not appreciate that the PSP was an ERISA-compliant plan, a fact that was dispositive on whether it was subject to levy. Bennett's argument that the motion to tax costs should have been granted because Coastline knew or should have known its enforcement efforts violated ERISA is without merit, in spite it of having received a copy of the PSP Basic Plan Document at some point in time.

Bennett also argues Coastline "sought unspecified attorney's fees and costs for the period of September 1, 2019 through April 30, 2020, relating to its efforts to unlawfully garnish assets of the PSP—actions by Coastline's counsel that were both unreasonable and unnecessary, as the retirement assets are unequivocally protected from creditors by federal and state law and the accounts that were the subject of the levy were not in the possession, custody, or control of Seamount."

The trial court expressly rejected Bennett's assertion that Seamount did not have control of the IRA and the PSP with regard to the notice of levy, an argument renewed in Bennett's appellate opening brief. With regard to that argument, at the July 6, 2020 hearing on Bennett's motion for reconsideration, the trial court stated: "I just don't find a lot of merit to that at all. [¶] Certainly, Seamount had control because if they didn't have control to some extent, the funds would never have been distributed. So, I'm not going into that." The appellate record supports the court's finding that Seamount was in a position to liquidate Bennett's interest in those assets and effected such a liquidation. At his debtor's examination, Bennett himself identified Seamount as the controlling entity with regard to the IRA and the PSP. Seamount never claimed it lacked such authority. In any event, if Seamount had not had the authority to liquidate those assets

31

and deliver them to the levying officer, there would have been no need for it to appear ex parte seeking leave to file a motion to intervene and obtain the court's order as to the proper disposition of those assets.

Furthermore, the trial court did not abuse its discretion in concluding the factual and legal questions relevant to determining whether the PSP was exempt from levy pursuant to ERISA, including the resolution of related federal preemption issues, were sufficiently novel and complex to justify Coastline incurring the costs it claimed. Although the trial court ultimately concluded that the PSP was an ERISA-compliant pension plan that was not subject to California's Enforcement of Judgments Law, Coastline was entitled to recover its reasonable and necessary costs incurred in resolving exemption issues in an effort to attempt to enforce the amended judgment. (§ 685.040.) Nothing in our record shows that Coastline attempted to levy the PSP with knowledge that it was automatically exempt from levy under ERISA and California law.

We have otherwise reviewed the record and find nothing to suggest the trial court's cost award, including attorney fees, or its denial of Bennett's motion to tax costs, constituted an abuse of discretion.

## C.

### *Bennett Forfeited His Challenge to the Court's Ruling on the IRA by Failing to Appeal from the March 2020 Order*

Finally, Bennett argues the trial court erred by denying his motion to reconsider the March 2020 Order as to the IRA because he "was entitled to an evidentiary hearing to determine the extent that the funds in his SEP-IRA were exempt as necessary for his support when he retires." At the July 6, 2020 hearing, the court stated it would not reconsider the March 2020 Order as to the IRA, notwithstanding Bennett's claim that it contained funds from the PSP: "I'm not going to consider whether respect to the IRA, and not allow any additional briefing. [*Sic.*] My order is final with respect to that. That is something on an IRA that it is the burden—that is certainly something that the

32

judgment-debtor needs to file a timely claim, because it is a different test—first of all, he has to show that it was actually rolled over. He didn't. And from the profit-sharing plan, he has to trace it. And also, once it turns into the IRA, it loses its ERISA exempt status. So, the Court is not inclined to address that issue." The parties agree that Bennett had until August 26, 2020, to appeal from the March 2020 Order. Orders denying motions for reconsideration are not appealable. (*Powell v. County of Orange, supra*, 197 Cal.App.4th at p. 1576.)

If Bennett believed the trial court erred regarding its ruling on the IRA, or that the court erred by failing to hold an evidentiary hearing to determine the extent assets in the IRA were exempt before ordering their disbursement to Coastline in the March 2020 Order, he had the option of challenging the court's ruling on the IRA by appealing from the March 2020 Order. Bennett did not file an appeal and thus is foreclosed from appellate review of that issue. (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8 ["California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited"]; *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1315-1316 [if a judgment or order is appealable, an aggrieved party must file a timely appeal or forever lose the opportunity to obtain appellate review].)

To the extent Bennett argues the trial court erred by not reconsidering the ruling on the IRA in its September 2020 Order, the argument is without merit. By the time the court issued the September 2020 Order, the time to appeal the court's ruling on the IRA had passed. So even assuming for the purpose of argument Bennett had a viable argument challenging the court's prior ruling on the IRA, a trial court generally may not correct judicial error in an appealable order or judgment after the time to appeal has passed. (*City of San Diego v. Superior Court* (1950) 36 Cal.2d 483, 487; *Raisin Investment Co. v. Magginetti* (1952) 109 Cal.App.2d 163, 164; see *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890.)

As Bennett failed to timely appeal the portion of the March 2020 Order regarding the disposition of the IRA, his right to appellate review of that issue has been forfeited.

## DISPOSITION

The postjudgment order is affirmed.  In the interests of justice, neither party shall recover costs on appeal.


MARKS, J.*

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.